A95A1402. RICHARD HANEY FORD, INC. v. FORD DEALER COMPUTER SERVICES.
(461 SE2d 282)

BIRDSONG, Presiding Judge.

Appellant Richard Haney Ford, Inc. appeals the order of the state court granting appellee/defendant's cross-motion for summary judgment and denying appellant/plaintiff's summary judgment motion. The sole enumeration is that the trial court erred in so ruling.

Appellant brought suit averring appellee's breach of a contract to provide certain computer services, including both hardware and software computer equipment to assist appellant, inter alia, in preparing reports for warranty work on automobiles to the Ford Motor Company data base. Appellant entered this contract with appellee's

---

predecessor in interest; pursuant thereto appellant purchased an 800 system, TI 100 series computer. It is averred that appellee breached the contract by failing to continue to support appellant's computer system as contractually required. Appellant further asserts that certain modified software was defective in that it listed customer complaints in the section of the report where the action taken on these complaints was to be listed and vice versa. Appellant claims that this deficiency has not been timely corrected. *Held*:

1. (a) The applicable summary judgment standard is that of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843).

(b) " 'The cardinal rule of [contract] construction is to ascertain the intention of the parties.' OCGA § 13-2-3. Contract construction is a three-step process. Initially, the construction of the contract is a question of law for the court. First, if no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. [Cits.] That is, where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. [Cit.] Secondly, if ambiguity does appear, '[t]he existence or non-existence of an ambiguity is itself a question of law for the court. [Cits.] [Finally, a] jury question arises only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction.' [Cit.] This is true even if the contract is difficult to construe. [Cit.] Further, a contract should be construed by examining the agreement in its entirety, and not merely by examining isolated clauses and provisions thereof. [Cits.]" *Duffett v. E & W Prop.*, 208 Ga. App. 484, 486 (2) (430 SE2d 858); compare *Orley Enterprises v. Tri-Pointe*, 522 NW2d 896 (1, 2) (Mich. App.) (contractual language interpreted according to its plain meaning; where document is unambiguous and unequivocal, its construction is for court to decide as a matter of law). "It is essential to note that this is a rule for construing [contracts] separate from those rules allocating burdens of proof at trial and on motion for summary judgment." *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680); compare *Wade v. Crannis*, 209 Ga. App. 501, 503 (2) (433 SE2d 669).

(c) The office of the President of Ford Dealer Computer Services is in Detroit, Michigan. The contract at issue is one for the sale of goods within the province of the Uniform Commercial Code. Cf. *Advanced Computer Sales v. Sizemore*, 186 Ga. App. 10 (1) (366 SE2d

303). Pursuant to an express contractual provision, Michigan substantive law controls the issues pertaining to the terms of this contract. Compare OCGA § 11-1-105 (1) and Michigan Statutes Annotated (MSA) § 19.1105 (1).

2. In November 1989, appellant entered the contract with appellee. Appellee agreed to sell and deliver and appellant agreed to buy and accept selected IDCS computer equipment and, in addition to remedial maintenance for the purchased equipment, certain software programs and services. The contract pertinently provided that: "[Appellee] agrees to provide software programs and other supporting materials for the number and type of IDCS applications selected by the [appellant/dealer]. . . . [Appellee] will also provide to the [appellant/dealer] subsequent modifications or enhancements to these applications as they become available for distribution. . . . [Appellee] agrees to make available the software programs selected . . . for a minimum period of five years commencing on the date that the [appellant/dealer] first agrees to accept any of [appellee's] IDCS software programs. [Appellee] reserves the right to change the specifications and the content of such software from time to time without incurring any liability to the [appellant/dealer] therefor, including any loss or inconvenience incurred by the [appellant/dealer] in the event that the changes to such software are incompatible with any modifications, alterations, additions, enhancements, accessories to the equipment not furnished under this agreement."

(a) Appellant contends, inter alia, that appellee refused to provide software or other support to appellant for the five-year period provided for in the contract, and that appellee would not support the software provided appellant unless the latter purchased new equipment from appellee. The contract was entered into in November 1989; the five-year period would expire in November 1994; appellant asserted breach and unilaterally terminated the contract as of January 31, 1993.

In July 1992, appellee notified appellant and its other customers that its supplier of computer equipment was selling its computer hardware and that such hardware would within a few years be discontinued by the purchasing company. Certain options were made available to appellee's customers who had purchased more sophisticated computer systems. On receipt of this notification, appellant immediately wrote appellee asserting that his system was not going to be supported and making certain demands to which appellee refused to agree. This suit for breach of contract resulted. In response to appellant's motion for summary judgment and in support of its own summary judgment cross-motion, appellee's vice president of software support executed an affidavit expressly asserting that appellee had "provided [appellant] with support services to the software licensed

to [appellant] throughout the entire period of the contract with [appellant], which contract [appellant] canceled effective January 31, 1993. . . . [Appellee] was prepared to continue to provide support services to the software licensed to [appellant] through the rest of the term of the contract, had [appellant] not canceled the contract effective January 31, 1993. . . . At no time did [appellee] refuse to provide support services to the software licensed to [appellant]. . . . At no time did [appellee] state to [appellant] that [appellee] would no longer support the software licensed to [appellant] prior to the end of the contract term." Moreover, the letter of notification to appellant regarding the change in appellee's computer hardware contained an attached series of written questions and answers explaining the effect of appellee's proposed equipment conversion. Question and Answer no. 6 states: "I own a TI 100 series computer (e.g., a 300, 600, or 800 system). What are my options? You will be able to *remain* on your 100 series system through December 31, 1995. At that time (or sooner) you can upgrade to an IBM 9370 system for the FDCS price in effect at the time of your conversion. When you move to the IBM 9370, your on-going software and support charges will be the same as they were on the 100 series computer. Your FDCS representative can discuss specific upgrade proposals with you." (Emphasis supplied.) Question and answer no. 15 states in further clarification of policy as follows: "What if I don't want to convert? How long will the TI be supported? FDCS has already announced that they will continue *support* for the 100 series systems through the end of 1995." (Emphasis supplied.) The evidence of record relied upon by appellee/movant pierces the averment in appellant's pleadings that it had been denied support in breach of the contract; the evidence shows that no denial of support was made during the life of the contract. A summary judgment movant/defendant may discharge his burden by pointing out by reference to the affidavits, depositions, and other documents in the record that there is an absence of evidence to support the plaintiff's case. If the moving party discharges this burden, the non-moving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. *Lau's Corp. v. Haskins*, supra. Appellant contends that it carried its burden by way of the affidavit of its president and the supporting documents thereto attached. This affidavit contains the general assertion that appellee breached the contract by failing to continue to support appellant's computer system, as reflected in appellee's letter of August 1992. Appellant asserts this letter establishes that appellee would no longer support the computer system which was sold to appellant, "but would only support larger systems, which were sold to larger dealers." This letter, however, contained the attached, pertinent question and answers above-discussed evidencing that appellee would continue to

support the series 800, TI 100 computers through December 31, 1995. Appellant has failed to come forward with specific evidence giving rise to a triable issue regarding its claim of withdrawal of support in violation of this particular provision of the contract. The affidavit of appellant's president, regarding this issue, is at best generalized and conclusory. On summary judgment, in the absence of substantiating fact or circumstances, conclusory allegations are insufficient to raise a material issue for trial. *Brooks v. Boykin*, 194 Ga. App. 854, 856 (3) (392 SE2d 46). Also, in response to a summary judgment motion, the non-movant may not rest on generalized allegations, but must come forward with specific facts to show that there is a genuine issue for trial. Appellant has not met its burden to go forward with this claim. *Precise v. City of Rossville*, 261 Ga. 210, 212 (3) (403 SE2d 47).

(b) Appellant further asserts that on or about December 1991, appellee provided a defective software program to appellant and that, as a result, appellant could not prepare warranty reports for the Ford Motor Company data base. Appellant's president executed an affidavit which, inter alia, attested to these facts, and specifically averred the software program was defective in that it listed customer complaints in the report section pertaining to the action taken on such complaints and vice versa. Unlike appellant's other claim, the facts recited in this affidavit, pertaining to the defective software claim, are neither conclusory nor generalized within the meaning of *Precise*, supra, and *Brooks*, supra.

Examination of appellant's complaint reveals that it does not meet the notice pleading requirements of the Civil Practice Act of this state (see generally *Wade v. Polytech Indus.*, 202 Ga. App. 18, 21 (2) (413 SE2d 468)) sufficiently to aver a claim grounded on breach of warranty; rather, consistent with appellant's litigative strategy at the trial and appellate levels, only a claim for breach of contract has been averred. Appellee asserts that, as only breach of contract is at issue, evidence which would be relevant only to a breach of warranty cause of action would not support appellant's claim of error. Appellee further contends that "while there may indeed be a genuine dispute between the parties as to whether or not the . . . software modification was defective, that dispute is not relevant to [appellant's] professed cause of action for breach of contract." As to contracts for the sale of goods, MSA § 19.2301 provides: "The obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract." Appellee asserts that it met all of these requirements and, that evidence of record does not support appellant's contention that the grant of summary judgment to appellee was erroneous. Under the terms of the contract, appellee promised, inter alia, to provide software programs and other supporting materi-

als for the various IDCS applications selected by appellant/dealer. It is generally recognized that an obligation of the seller may be stated in the form of a collateral warranty, a warranty implied by law, or "in adjective form as part of the description of the goods." 5 Williston on Contracts (3d ed.), § 705. The contract in issue created in adjective form an obligation to provide the described software programs and other supporting material. Moreover, in Michigan as in Georgia, there is an inherent duty imposed in all contracts of good faith and fair dealing. See Woody v. Tamer, 405 NW2d 213, 216 (1) (Mich. App.); compare West v. Koufman, 259 Ga. 505, 506 (384 SE2d 664). Good faith and fair dealing would require appellee to satisfy its obligation under the contract by delivering to appellant software programs and other supporting material that were free from substantial defect. Whether the modified software provided appellant contained a substantial defect in breach of the contract constitutes an issue for jury resolution in this case.

Accordingly, the trial court erred in granting appellee summary judgment as to appellant's entire claim of breach of contact; judgment will be reversed and the case returned to the trial court for disposition consistent with this opinion.

*Judgment reversed and remanded. Johnson and Smith, JJ., concur.*

DECIDED AUGUST 3, 1995.

*Smith, Wallis & Scott, Kenneth A. Smith, James W. Wallis, Jr.,* for appellant.
*Tisinger, Tisinger, Vance & Greer, C. David Mecklin, Jr.,* for appellee.

