A01A0219. PFEIFFER v. DEPARTMENT OF TRANSPORTATION.
(551 SE2d 58)

RUFFIN, Judge.

This appeal stems from a tragic highway construction accident which caused the death of Robert Allen Pfeiffer. Pfeiffer's surviving spouse ("Pfeiffer") sued the Georgia Department of Transportation ("DOT"), alleging that the accident was caused by DOT's negligence. The trial court granted DOT's motion for summary judgment, and Pfeiffer appeals. For reasons that follow, we affirm.

Summary judgment is appropriate where the evidence of record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1]

---

[1] OCGA § 9-11-56 (c).

On appeal, we review a trial court's grant of summary judgment de novo.[2]

The facts underlying the trial court's judgment in this case are undisputed. The evidence shows that DOT contracted with Rosiek Construction Company ("Rosiek") to construct the Sidney Lanier Bridge. The contract describes the approximately $19 million, federally funded project as "1.088 miles of const. of a north & a south approach bridge . . . over the Brunswick River for the proposed Sidney Lanier Bridge replacement. Also includes construction of a detour." The contract required that the construction be performed "under the direct supervision and to the entire satisfaction of [DOT]." However, the contract further provided, under a section titled "Safety: Accident Prevention," that

> [i]n the performance of this contract [Rosiek] shall comply with all applicable Federal, State, and local laws governing safety, health, and sanitation (23 CFR 635). [Rosiek] shall provide all safeguards, safety devices, and protective equipment and take any other needed actions as it determines, or as the [DOT] contracting officer may determine, to be reasonably necessary to protect the life and health of employees on the job. . . . It is a condition of this contract, and shall be made a condition of each subcontract, which [Rosiek] enters into pursuant to this contract, that [Rosiek] and any subcontractor shall not permit any employee, in performance of the contract, to work in surroundings or under conditions which are unsanitary, hazardous or dangerous to his/her health or safety, as determined under construction safety and health standards (29 CFR 1926) promulgated by the Secretary of Labor.[3]

During the bridge project, Rosiek employed Mr. Pfeiffer as a construction worker. Mr. Pfeiffer was killed when a large concrete form, which was braced on only one side, fell on him. It is undisputed that, although DOT employed engineers and inspectors at the project site to monitor and supervise various aspects of the construction, including a traffic control plan, these workers and the DOT did not assume any responsibility for the construction workers' safety. This is

---

[2] See *Moore v. ECI Mgmt.*, 246 Ga. App. 601 (542 SE2d 115) (2000).

[3] We note that DOT was required to incorporate these safety provisions into its contract with Rosiek pursuant to 23 CFR §§ 635.108 and 633.101-633.103 (requiring incorporation of form FHWA-1273 "Required Contract Provisions, Federal-Aid Construction Contracts"). The safety standards, promulgated under 29 CFR § 1926, which were incorporated by reference into the parties' contract, generally regulate safety and health for construction work sites. Subpart Q of § 1926, which governs concrete and masonry construction, contains numerous safety requirements for concrete formwork and shoring. See 29 CFR § 1926.703.

because, as stated by a DOT representative, "the specs read for themselves. The contractor is responsible for their own safety program."

Pfeiffer's complaint alleged that, under DOT's contract with Rosiek, "DOT undertook and assumed the responsibility to insure that proper safety devices and practices were utilized in the construction." Pfeiffer further alleged that "DOT breached its duty of care to Robert Allen Pfeiffer by failing to take proper steps to insure that proper safety devices and practices were utilized." DOT denied these allegations and moved for summary judgment on the ground that, under the contract, DOT delegated the responsibility for administering on-site construction safety procedures to Rosiek.

Pfeiffer responded to DOT's motion, arguing that because the bridge project was a federal aid construction project, 23 CFR § 630.1010 (b) imposed a nondelegable duty on DOT to make certain that the safety aspects of the contract were effectively administered by the contractor. The cited regulation requires, in part, that "[t]he highway agency [DOT] shall designate a qualified person at the project level who will have the primary responsibility and sufficient authority for assuring that the TCP [traffic control plan] and *other safety aspects* of the contract are effectively administered."[4] Pfeiffer argued that the reference to "other safety aspects" required the DOT to assure Rosiek's compliance with the safety/accident prevention provisions in the contract.

In granting DOT's motion, the trial court found that "the responsibility for maintaining a safe work site . . . was left to the contractors performing the work, including Rosiek Construction." And, after reviewing four of the five subsections of 23 CFR § 630.1010, the court found that they all dealt exclusively with traffic control plans.[5] In light of these findings, the court concluded that the

> operative scope of the phrase "other safety aspects" in [§ 630.1010 (b)] is limited to things in addition to traffic control plans which relate to dangers inherent in engaging in construction near traffic. . . . [The] regulation does not require [DOT] to undertake supervisory functions with respect to other aspects of the construction process.

Pfeiffer challenges this ruling on appeal.

1. We note initially that the trial court properly construed, as a matter of law, the contract between DOT and Rosiek. Under Georgia

---

[4] (Emphasis supplied.) 23 CFR § 630.1010 (b).
[5] The trial court erroneously referred to subsection (d), which addresses traffic control training, as subsection (c). The court did not discuss the content of subsection (c), which actually deals with payment for traffic control devices.

law, trial courts are required to construe unambiguous and unequivocal contracts, and "[t]he cardinal rule of construction is to ascertain the intent of the parties."[6] If the parties' intent is clear from the contract terms, then a court should look to the contract alone.[7] If the contract is ambiguous, a court may consider the attendant circumstances and the contracting parties' explanations to determine their intent.[8] In addition, a court should construe a contract in its entirety and "not merely by examining isolated clauses and provisions thereof."[9]

In the contract at issue, DOT and Rosiek unequivocally agreed that DOT would have a general duty to directly supervise the construction. However, the parties also specifically agreed that it was Rosiek's duty to comply with all safety laws and, more importantly, that Rosiek had the responsibility of ensuring that its employees and any subcontractors' employees were not working under hazardous or dangerous conditions.[10]

We do not believe that the parties' delegation of this responsibility to Rosiek is ambiguous. Furthermore, even if the contract were ambiguous, DOT's representatives stated their understanding that Rosiek was responsible for implementing its own safety program, and Pfeiffer did not point to any conflicting evidence of the parties' intent. In addition, considering the magnitude of the project, it makes sense that the parties would place ultimate responsibility for worker safety on Rosiek. While Rosiek, through its employees, was likely present wherever construction was being performed along the one-mile bridge and the detour, it would be unreasonable to expect a DOT employee to monitor every action of every contractor and subcontractor employee to ensure his or her safety. We therefore conclude that the trial court correctly found that the parties intended to delegate to Rosiek the responsibility for maintaining worker safety.

2. We must still consider, however, Pfeiffer's assertion that 23 CFR § 630.1010 (b) precluded delegation of this responsibility. In construing § 630.1010 (b), we employ the basic rules of statutory construction.[11] Under these rules, we must look to the plain language of

---

[6] OCGA § 13-2-3; *Richard Haney Ford, Inc. v. Ford Dealer Computer Svcs.*, 218 Ga. App. 315, 316 (1) (b) (461 SE2d 282) (1995).

[7] See id.

[8] See OCGA § 13-2-2 (1).

[9] (Punctuation omitted.) *Richard Haney*, supra. See also OCGA § 13-2-2 (4).

[10] See *Versico, Inc. v. Engineered Fabrics Corp.*, 238 Ga. App. 837, 841 (2) (520 SE2d 505) (1999) (stating rule that "when specific provisions in a contract are applicable, they prevail over any conflicting general language").

[11] See *First Union Nat. Bank &c. v. Collins*, 221 Ga. App. 442, 444 (471 SE2d 892) (1996); *Sekula v. Fed. Deposit Ins. Corp.*, 39 F3d 448, 454, n. 14 (3rd Cir. 1994) (applying rules of statutory construction to agency regulation).

the regulation to determine its meaning.[12] However, even if words are apparently plain in meaning, they "must not be read in isolation. Instead, they must be read in the context of the statute as a whole."[13]

Reading 23 CFR § 630.1010 (b) in the context of the other subsections within that regulation, it is clear that the reference to "other safety aspects" refers to other traffic safety aspects. As pointed out by the court below, each of these subsections provides requirements relating exclusively to moving traffic safely through the road construction site.[14] Indeed, § 630.1010 is part of a larger set of regulations titled "Traffic Safety in Highway and Street Work Zones."[15] Although these regulations contemplate construction worker safety,[16] such consideration is exclusively within the context of traffic safety.[17] Accordingly, the trial court correctly concluded that § 630.1010 (b) did not impose a nondelegable duty on DOT to make certain that the nontraffic safety aspects of the contract were effectively administered by Rosiek.

3. Pfeiffer also argues that other regulations and a federal statute imposed a nondelegable duty on DOT to administer construction safety. Pfeiffer, however, never raised these arguments before the trial court on summary judgment. It is well established that "[t]his court will not consider arguments neither raised nor ruled on in the trial court and that are asserted for the first time on appeal."[18] Accordingly, we conclude that Pfeiffer has waived these arguments for appeal.[19]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED JUNE 1, 2001 —
RECONSIDERATION DENIED JULY 19, 2001 — 

*James L. Ford, Sr.*, for appellant.
*Thurbert E. Baker, Attorney General, Whelchel, Brown, Readdick*

---

[12] See id.

[13] *In re Diamond Mfg. Co.*, 123 Bankr. 125, 128 (S.D. Ga. 1990), aff'd sub nom. *Moore v. Diamond Mfg. Co.*, 959 F2d 972 (11th Cir. 1992). See also *Monticello, Ltd. v. City of Atlanta*, 231 Ga. App. 382, 383 (1) (499 SE2d 157) (1998).

[14] See 23 CFR § 630.1010.

[15] See 23 CFR § 630, subpart J.

[16] See id. at § 630.1002.

[17] See id. at §§ 630.1004 (discussing implementation of the "manual on uniform traffic control devices" ("MUTCD")); 630.1006 (discussing policy to protect motorists and workers through the development of procedures consistent with the MUTCD).

[18] *Chiaka v. Rawles*, 240 Ga. App. 792, 796 (4) (525 SE2d 162) (1999) (citing *Peavy v. Goodroe*, 237 Ga. App. 36, 37 (1) (514 SE2d 699) (1999); *Saffar v. Chrysler First &c.*, 215 Ga. App. 239, 240 (1) (450 SE2d 267) (1994)).

[19] We note, however, that the federal regulations cited at note 3, supra, required DOT to incorporate into its contract with Rosiek the provisions delegating safety management to Rosiek.

*& Bumgartner, J. Thomas Whelchel, Bondurant, Mixson & Elmore, Frank M. Lowrey IV*, for appellee.