**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 26, 2022**

# In the Court of Appeals of Georgia

A22A1148. AU MEDICAL CENTER, INC. v. GEORGIA DEPARTMENT OF COMMUNITY HEALTH, et al.

DILLARD, Presiding Judge.

This appeal arises from the Georgia Department of Community Health's grant of a certificate of need to Doctors Hospital of Augusta, LLC, which it applied for to build a free standing emergency department in Columbia County. Following the Department's decision (which was issued by its commissioner), AU Medical Center, Inc. sought judicial review of that decision in the Superior Court of Fulton County, which granted judicial review and affirmed the grant of the certificate of need to Doctors.[1]

---

[1] For ease of reference and the sake of clarity, we will refer to the Department of Community Health as "the Department," Doctors Hospital of Augusta, LLC as "Doctors," AU Medical Center, Inc. as "AUMC," the Superior Court of Fulton County as the "trial court," a certificate of need as a "CON," and a free standing

Specifically, AUMC argues the trial court erred in affirming the Department's decision because the commissioner (1) acted in excess of his statutory authority by failing to satisfy (and violating) the requirements of OCGA § 31-6-44 (k) (1); (2) made conclusions of law unsupported by the factual findings; and (3) improperly failed to follow certain Department precedent or provide a reasonable explanation for not doing so. For the reasons set forth *infra*, we affirm.[2]

*I. Statutory and Regulatory Framework.*

Before detailing the factual and procedural background underlying this case, it is helpful to first outline the statutory and regulatory framework used for evaluating CON applications. The State Planning and Development Act, which is codified at OCGA § 31-6-40 et seq. (the "CON Act"), "establishes a comprehensive system of planning for the orderly development of adequate healthcare services throughout the

emergency department as an "FSED." As the appellees in this case, the Department and Doctors have filed separate briefs. Additionally, we note that Marsha A. Hopkins drafted and signed the Department's final decision on behalf of its commissioner, Frank Berry. So, although Hopkins drafted and signed the Department's decision, we refer to the commissioner throughout this opinion with the pronouns he/him/his.

[2] Oral argument was held in this appeal on August 3, 2022, and is archived on the Court's website. *See* Court of Appeals of Georgia, Oral Argument, Case Nos. A22A1148. (Aug. 3, 2022), available https://vimeo.com/736878424

state."[3] To this end, OCGA § 31-6-40 (a) provides that "[o]n and after July 1, 2008, any new institutional health service shall be required to obtain a [CON] . . . ." And

---

[3] *Drs. Hosp. of Augusta, LLC v. Dep't of Cmty. Health*, 356 Ga. App. 428, 429 (847 SE2d 614) (2020) (punctuation omitted); *accord Palmyra Park Hosp., Inc. v. Phoebe Sumter Med. Ctr.*, 310 Ga. App. 487, 488 (714 SE2d 71) (2011); *see Diversified Health Mgmt. Servs., Inc. v. Visiting Nurses Ass'n of Cordele, Inc.*, 254 Ga. 500, 502 (4) (330 SE2d 885) (1985) ("[T]he purpose of the [CON] Act is the development of health care services and facilities in an orderly and economic fashion, and it is not a mechanism for determination of the respective rights of competitors."); OCGA § 31-6-1 ("The policy of this state and the purposes of this chapter are to ensure access to quality health care services and to ensure that health care services and facilities are developed in an orderly and economical manner and are made available to all citizens and that only those health care services found to be in the public interest shall be provided in this state."); *see also Diversified Health Mgmt. Servs., Inc. v. Visiting Nurses Ass'n of Cordele, Inc.*, 254 Ga. 500, 502 (4) (330 SE2d 885) (1985) ("[T]he [codified] purpose of the [CON] Act is the development of health care services and facilities in an orderly and economic fashion, and it is not a mechanism for determination of the respective rights of competitors."). *But see Premier Health Care Invs., LLC v. UHS of Anchor, L.P.*, 310 Ga. 32, 54 n.24 (849 SE2d 441) (2020) (noting that "this Court has already suggested that OCGA § 31-6-40 (a) may be pressing the outer limits of the General Assembly's constitutional authority to regulate the healthcare industry further . . . ."); Adam Griffin, "Protecting Economic Liberty in the Federal Courts: Theory, Precedent, Practice," 22 Fed. Soc. Rev. 232, 241 (2021) ("CON laws unconstitutionally discriminate between healthcare providers and infringe their rights to earn a living under the 14th Amendment . . . under both the Due Process and Equal Protection Clauses."); *Tiwari v. Friedlander*, 2020 WL 4745772, *2 (W.D. Ky. 2020) (noting evidence in that case included "four decades of academic and government studies saying Certificate of Need laws accomplish nothing more than protecting monopolies held by incumbent companies . . . [and that] these laws worsen the problems of cost, access, and quality of care that the laws are supposed to help fix. If requiring a Certificate of Need for a home health company worsens all problems it purports to fix, the law is irrational. And if it's irrational, it's unconstitutional.").

3

these services include, *inter alia*, "[t]he construction, development, or other establishment of a new, expanded, or relocated health care facility . . . ."[4] Particularly relevant here, in 2019, the General Assembly amended the CON Act's definition of "health care facility" to include "freestanding emergency departments or facilities not located on a hospital's primary campus."[5]

Of course, in determining whether the Department was "authorized to promulgate a rule to create a category of 'new institutional health service' requiring a CON, . . . we first look to the relevant legal texts."[6] And those include a "comprehensive statutory scheme defining and establishing the CON program, as well as regulations the Department has promulgated with respect to CONs."[7] As our Supreme Court has acknowledged, "[t]he statutory framework that sets forth the CON program is not the only text relevant to our inquiry."[8] Indeed,

---

[4] OCGA § 31-6-40 (a) (1).

[5] OCGA § 31-6-2 (17); *see* former OCGA § 31-6-2 (17) (2018) (defining "health care facility" without including FSEDs); *see also Premier Health Care Invs., LLC*, 310 Ga. at 36 (2) (a) (acknowledging that "[t]he enumerated list of new institutional health services that require a CON has changed over time").

[6] *Premier Health Care Invs. LLC*, 310 Ga. at 35 (2).

[7] *Id.*

[8] *Id*. at 37 (2) (b).

4

to administer the [CON] program, the Department is authorized to adopt, promulgate, and implement rules and regulations sufficient to administer the [CON] program, to establish, by rule, need methodologies for new institutional health services and health care facilities . . . .[9]

As to the administrative process for obtaining a CON to build a new healthcare facility in Georgia (such as the FSED proposed by Doctors), a party must first submit an application with the Department.[10] Then, the Department "review[s] the application and all written information submitted by the applicant . . . and all information submitted in opposition to the application to determine the extent to which the proposed project is consistent with the applicable considerations"[11] delineated in the statutory and regulatory scheme governing CONs.[12] Following this

---

[9] *Id.* (quoting OCGA § 31-6-21).

[10] *See* OCGA § 31-6-40 (b) ("Any person proposing to develop or offer a new institutional health service or health care facility shall, before commencing such activity, submit a letter of intent and an application to the [D]epartment and obtain a [CON] in the manner provided in this chapter unless such activity is excluded from the scope of this chapter.").

[11] OCGA § 31-6-43 (g).

[12] *See* OCGA § 31-6-21 (b) (4) (authorizing the Department "[t]o adopt, promulgate, and implement rules and regulations sufficient to administer" the CON program); OCGA § 31-6-42 (a) (1)-(17) (listing general review considerations for the grant or denial of a CON); Ga. Comp. R. & Regs. r. 111-2-2.09 (1) (a)-(q) (same).

review, the Department "provide[s] written notification to an applicant of [its] decision to issue or to deny issuance of a [CON] for the proposed project."[13]

Next, any party opposing the Department's initial so-called desk decision may request an administrative appeal to the Certificate of Need Appeal Panel, which is a separate and independent administrative agency responsible for conducting a review of the Department's initial decision through a designated hearing officer.[14] And once appointed, the hearing officer conducts a full evidentiary hearing on the matter.[15] Specifically, the hearing officer must decide whether, "in the hearing officer's

[13] OCGA § 31-6-43 (i).

[14] *See* OCGA § 31-6-44 (a) ("Effective July 1, 2008, there is created the Certificate of Need Appeal Panel, which shall be an agency separate and apart from the [D]epartment and shall consist of a panel of independent hearing officers. The purpose of the appeal panel shall be to serve as a panel of independent hearing officers to review the [D]epartment's initial decision to grant or deny a certificate of need application."); OCGA § 31-6-44 (d) ("Any party that is permitted to oppose an application pursuant to paragraph (2) of subsection (d) of Code Section 31-6-43 that has notified the [D]epartment prior to its decision that such party is opposed to the application before the [D]epartment shall have the right to an initial administrative appeal hearing before an appeal panel hearing officer or to intervene in such hearing."); OCGA § 31-6-44 (f) ("The appeal hearing conducted by the appeal panel hearing officer shall be a de novo review of the decision of the [D]epartment.").

[15] *See* OCGA § 31-6-44 (e) ("In fulfilling the functions and duties of this chapter, the hearing officer shall act, and the hearing shall be conducted as a full evidentiary hearing."); OCGA § 31-6-44 (g) ("All evidence shall be presented at the initial administrative appeal hearing conducted by the appointed hearing officer.").

judgment, the application is consistent with the considerations as set forth in Code Section 31-6-42 and the [D]epartment's rules, as the hearing officer deems such considerations and rules applicable to the review of the project."[16] Subsequently, "[w]ithin 30 days after the conclusion of the hearing, the hearing officer shall make written findings of fact and conclusions of law as to each consideration as set forth in Code Section 31-6-42 and the [D]epartment's rules, including a detailed statement of the reasons for the decision of the hearing officer."[17] If no party appeals to the Department's commissioner, the hearing officer's ruling becomes the Department's final agency decision.[18]

But any party, including the Department, which "disputes any finding of fact or conclusion of law rendered by the hearing officer in such hearing officer's decision and which wishes to appeal that decision may appeal to the commissioner . . . ."[19] If

---

[16] OCGA § 31-6-44 (f).

[17] OCGA § 31-6-44 (i).

[18] *See* OCGA § 31-6-44 (j) ("The decision of the appeal panel hearing officer will become the final decision of the [D]epartment upon the sixty-first day following the date of the decision unless an objection thereto is filed with the commissioner within the time limit established in subsection (i) of this Code section.").

[19] OCGA § 31-6-44 (i).

7

a party does so, "the decision of the commissioner shall become the [D]epartment's final decision by operation of law."[20] In such an appeal,

> the commissioner may adopt the hearing officer's order as the final order of the [D]epartment or the commissioner may reject or modify the conclusions of law over which the [D]epartment has substantive jurisdiction and the interpretation of administrative rules over which it has substantive jurisdiction.[21]

The scope of the commissioner's authority and review defined in OCGA § 31-6-44 (k) (1) is particularly relevant to the issues presented in this appeal. Specifically,

> [b]y rejecting or modifying [a hearing officer's] conclusion of law or interpretation of administrative rule, the [D]epartment must state with particularity its reasons for rejecting or modifying such conclusion of law or interpretation of administrative rule and must make a finding that its substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that which was rejected or modified.[22]

---

[20] OCGA § 31-6-44 (m).

[21] OCGA § 31-6-44 (k) (1).

[22] *Id.*

Further, a commissioner's "[r]ejection or modification of conclusions of law may not form the basis for rejection or modification of findings of fact."[23] Lastly,

> [t]he [C]ommissioner may not reject or modify the findings of fact unless the commissioner first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon any competent substantial evidence or that the proceedings on which the findings were based did not comply with the essential requirements of law.[24]

Following the commissioner's decision, "[a]ny party to the initial administrative appeal hearing conducted by the appointed appeal panel hearing officer, excluding the [D]epartment, may seek judicial review of the final decision . . . ."[25] And during such review by a superior court,

> the court may reverse or modify the final decision only if substantial rights of the appellant have been prejudiced because the procedures followed by the [D]epartment, the hearing officer, or the commissioner or the administrative findings, inferences, and conclusions contained in the final decision are:

---

[23] *Id.*

[24] *Id.*

[25] OCGA § 31-6-44.1 (a).

(1) [i]n violation of constitutional or statutory provisions;

(2) [i]n excess of the statutory authority of the [D]epartment;

(3) [m]ade upon unlawful procedures;

(4) [a]ffected by other error of law;

(5) [n]ot supported by substantial evidence, which shall mean that the record does not contain such relevant evidence as a reasonable mind might accept as adequate to support such findings, inferences, conclusions, or decisions, which such evidentiary standard shall be in excess of the 'any evidence' standard contained in other statutory provisions; or

(6) [a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.[26]

Upon further discretionary appeal to *this* Court, "[w]e apply the same standards of judicial review when considering the superior court's decision on appeal."[27] Importantly, our duty is not to review "whether the record supports the superior

---

[26] OCGA § 31-6-44.1 (a) (1)-(6).

[27] *ASMC, LLC v. Northside Hosp. Inc.,* 344 Ga. App. 576, 581 (810 SE2d 663) (2018); *see Kennestone Hosp., Inc. v. Dep't of Cmty. Health*, 346 Ga. App. 70, 74 (815 SE2d 266) (2018) (holding, in a case involving a CON, that we apply the same standard of review as the trial court).

10

court's decision but whether the record supports the final decision of the administrative agency."[28] And importantly, we only "defer to an agency's interpretation . . . when we are unable to determine the meaning of the legal text at issue."[29] As a result, when a statute is "not ambiguous after we apply canons of statutory construction[,] . . . [o]ur case law . . . does not support any deference to the [DCH's] interpretation of the relevant CON statutes, or to its interpretation of its own unambiguous regulations."[30] Here, none of the parties identify any ambiguities in OCGA § 31-6-44 (k) (1) or contend this Court is unable to determine its meaning. So, under these circumstances, we owe no deference to the Department in its interpretation and application of that statute.[31]

---

[28] *Ne. Ga. Med. Ctr., Inc. v. Winder HMA, Inc.*, 303 Ga. App. 50, 55 (2) (693 SE2d 110) (2010) (punctuation omitted); *accord Eagle W., LLC v. Ga. Dep't of Transp.*, 312 Ga. App. 882, 885 (720 SE2d 317) (2011).

[29] *City of Guyton v. Barrow*, 305 Ga. 799, 802 (2) (828 SE2d 366) (2019). *But see infra* note 31.

[30] *Premier Health Care Invs.*, 310 Ga. at 38 (3) (a) n.5.

[31] *See Handel v. Powell*, 284 Ga. 550, 553 (670 SE2d 62) (2008) ("While judicial deference is afforded an agency's interpretation of statutes it is charged with enforcing or administering, the agency's interpretation is not binding on the courts, which have the ultimate authority to construe statutes . . . . The judicial branch makes an *independent determination* as to whether the interpretation of the administrative agency correctly reflects the *plain language* of the statute . . . ." (citations and

11

*II. Administrative Proceedings*.

Doctors is a 354-bed hospital located in Augusta, Georgia, and on January 21, 2020, it filed an application with the Department requesting a CON to build an FSED in Columbia County. Specifically, the application indicated that Doctors sought to expand its emergency service by building an FSED approximately 5.2 miles from its hospital's main campus. The proposed FSED's major components would include one trauma room, one secured holding room, one bariatric exam room, one isolation

punctuation omitted) (emphasis supplied)); *Exec. Limousine Transps., Inc. v. Curry*, 361 Ga. App. 626, 628-29 (865 SE2d 217) (2021) (same)). Some judges of this Court believe the time has come to reconsider such deference. As Judge Don Willett has aptly noted, "interpreting the laws under which Americans live is a quintessentially judicial function." *Forrest Gen. Hosp. v. Azar*, 926 F3d 221, 234 (III) (5th Cir. 2019); *see also Marbury v. Madison*, 5 U.S. 137, 177 (2 LE2d 60) (1803) (holding that "it is emphatically the province and duty of the judicial department to say what the law is"); *Michigan v. E.PA.*, 576 U.S. 743, 762 (135 SCt 2699, 2712-2714, 192 LE2d 674) (2015) (Thomas, J., concurring) ("The judicial power, as originally understood, requires a court to exercise its independent judgment in interpreting and expounding upon the laws. Interpreting . . . statutes—including ambiguous ones administered by an agency—calls for that exercise of independent judgment. *Chevron* deference precludes judges from exercising that judgment, forcing them to abandon what they believe is the best reading of an ambiguous statute in favor of an agency's construction. It thus wrests from Courts the ultimate interpretive authority to 'say what the law is,' and hands it over to the Executive . . . . [W]e seem to be straying further and further from the Constitution without so much as pausing to ask why. We should stop to consider that document before blithely giving the force of law to any other agency 'interpretations' of federal statutes." (citations & punctuation omitted)); *City of Guyton*, 305 Ga. at 799 ("At the core of the judicial power is the authority and the responsibility to interpret legal text.").

room, one triage room, eight general exam rooms, computer topography scan capabilities (CT scans), general radiology, one laboratory, one reception area, one patient/family waiting area, an ambulance entrance, an ambulance vestibule, one nurses station, and space for support staff.

After Doctors filed its CON application, AUMC filed its opposition to the application with the Department, contending that it should be denied because it failed to show a need for the FSED in the proposed location. Thus, according to AUMC, the FSED proposed by Doctors was not consistent with the general review considerations outlined in the CON Act.[32] Nevertheless, on June 1, 2020, the Department issued a desk decision granting a CON to Doctors for the proposed FSED, but in doing so noted that any party to the proceedings had 30 days to appeal the decision. AUMC did just that, appealing the Department's grant of the CON to Doctors to the CON Appeal Panel. Then, after a full evidentiary hearing, the designated hearing officer for the CON Appeal Panel issued a detailed order with findings of fact and conclusions of law. Ultimately, the hearing officer reversed the Department's initial desk decision to grant Doctors the CON application.

---

[32] OCGA § 31-6-42 (a) (1)-(17) (listing general review considerations for the grant or denial of a CON); Ga. Comp. R. & Regs. r. 111-2-2.09 (1) (a)-(q) (same).

13

Doctors then appealed the hearing officer's decision to the Department's commissioner, who also issued a detailed decision, rejecting many of the hearing officer's findings of fact and conclusions of law and reversing the decision to deny Doctors's CON application. Thus, the Department's final decision was to grant Doctors a CON to build its proposed FSED.[33] AUMC then sought judicial review in the superior court, but ultimately, that court affirmed the Department's final decision to grant the CON to Doctors. This appeal by AUMC follows.

*III. Analysis.*

1. AUMC first argues the trial court erred in affirming the commissioner's decision because he violated the requirements of and exceeded his authority under OCGA § 31-6-44 (k) (1) when rejecting or modifying many of the hearing officer's findings of fact. We agree.

Both the judicial standard of review of the Department's final decision, as well as the scope of the commissioner's authority during the administrative process, are codified in the CON Act. Suffice it to say, when construing statutes, agency rules, and regulations, "we employ the basic rules of statutory construction and look to the plain

---

[33] *See supra* note 20 & accompanying text.

14

language of the regulation to determine its meaning."[34] In doing so, we must construe the statute, rule, or regulation "according to its own terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage."[35] Still, even if words are apparently plain in meaning, they "must not be read in isolation and instead, must be read in the context of the [statute, rule, or] regulation as a whole."[36] Additionally, although judicial deference is generally afforded to an agency's interpretation of statutes and its own rules and regulations,[37] we owe no deference to the Department's interpretation of OCGA § 31-6-44 (k) (1)

---

[34] *Upper Chattahoochee Riverkeeper, Inc. v. Forsyth Cnty.*, 318 Ga. App. 499, 502 (1) (734 SE2d 242) (2012); *accord Walker v. Dep't of Transp.*, 279 Ga. App. 287, 292 (2) (a) (630 SE2d 878) (2006).

[35] *New Cingular Wireless PCS, LLC v. Ga. Dep't of Revenue*, 303 Ga. 468, 472 (2) (813 SE2d 388) (2018) (punctuation omitted); *accord Lyman v. Cellchem Int'l. Inc.*, 300 Ga. 475, 477 (796 SE2d 255) (2017).

[36] *Upper Chattahoochee Riverkeeper Inc.*, 318 Ga. App. at 502 (1); *accord Pfeiffer v. Dep't of Transp.*, 250 Ga. App. 643, 646 (2) (551 SE2d 58) (2001); *see also New Cingular Wireless PCS LLC*, 303 Ga. at 472 (2) ("In this regard, in construing language in any one part of a statute [or regulation], a court should consider the entire scheme of the statute [or regulation] and attempt to gather the [codified] legislative intent from the [text of the] statute [or regulation] as a whole." (punctuation omitted)).

[37] *See supra* note 29 & accompanying text.

15

because its text is plain and unambiguous.[38] With these guiding canons of construction in mind, we turn now to the parties' arguments regarding the statutory and regulatory authorities at issue.

In this case, AUMC contends the commissioner applied an improper standard of review in rejecting or modifying many of the hearing officer's findings of fact. Specifically, AUMC contends the commissioner violated and exceeded his authority under OCGA § 31-6-44 (k) (1), which provides, in relevant part,

> [t]he commissioner *may not* reject or modify the findings of fact [of the hearing officer] unless the commissioner *first* determines from a review of the entire record, and *states with particularity in the order*, that the findings of fact were not based upon any *competent substantial evidence* or that the proceedings on which the findings were based did not comply with the essential requirements of law.[39]

OCGA § 31-6-44 (k) (1) further provides that "[r]ejection or modification of conclusions of law *may not form the basis for* rejection or modification of findings of fact[.]"[40]

---

[38] *See supra* notes 29-31 & accompanying text.

[39] (Emphasis supplied).

[40] (Emphasis supplied).

Our review of the commissioner's decision, the underlying administrative proceeding, and the record as a whole, supports AUMC's contention that the commissioner violated and exceeded his authority under the foregoing statutory provisions. For starters, although he rejected over 45 of the hearing officer's 70 factual findings, the only instance in the commissioner's 23-page order that includes the phrase "competent substantial evidence" is when he quotes OCGA § 31-6-44 (k) (1) as the standard of review at the outset of his decision. Indeed, instead of considering whether competent substantial evidence supported the findings of fact at issue, the commissioner provided a myriad of *other* reasons for disregarding or rejecting most of those findings, many of which he expressly stated were based on his rejection of the hearing officer's conclusions of law or because they were irrelevant to his conclusions.

Importantly, OCGA § 31-6-44 (k) (1) expressly forbids the commissioner from basing the modification or rejection of factual findings on the "[r]ejection or modification of conclusions of law . . . ." But the commissioner repeatedly did so in this case, expressly rejecting, in full or in part, at least *21* of the hearing officer's factual findings for reasons related to the rejection of his conclusions of law. For example, the commissioner rejected or "deleted" findings of fact 33, 41-42, and 48-52

because they "were not facts upon which *a valid legal conclusion could be based*."[41]And the commissioner "deleted" finding of fact 37 in its entirety because "any *legal conclusions* to be drawn from [it] would . . . be flawed."[42] Further, the commissioner rejected findings of fact 59-70, at least in part, because they were unrelated or irrelevant to any corresponding conclusion of law. But whether a fact is irrelevant depends entirely upon the conclusions of law to which they would or would not relate to.[43] Simply put, as demonstrated by the foregoing examples, not only did the commissioner make no effort to determine whether these findings of fact were supported by the evidence (much less competent substantial evidence), he violated

---

[41] (Emphasis supplied).

[42] (Emphasis supplied).

[43] (Emphasis supplied). We are not suggesting the commissioner is unable to reach different *legal conclusions* than those of the hearing officer. But under OCGA § 31-6-44 (k) (1), when rejecting or modifying a conclusion of law or interpretation of administrative rule, the Department must "state with particularity its reasons for rejecting or modifying such conclusion of law or interpretation of administrative rule and must make a finding that its substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that which was rejected or modified." That said, the CON Act requires the commissioner to *first* determine which of the hearing officer's *factual findings*—irrelevant, misleading, or otherwise—are supported by competent substantial evidence. And again, he must explain this requisite determination with particularity in his order.

18

the express prohibition on rejecting factual findings based on the rejection of the hearing officer's legal conclusions.

Importantly, the phrase "competent substantial evidence" is a term of art with a specific meaning. Indeed, "[s]ubstantial evidence"—which is a portion of the statutory phrase at issue—is defined in the CON Act; and OCGA § 31-6-44.1 (a) (5) explains that a finding of fact is

> [n]ot supported by substantial evidence . . . [when] the record does not contain such relevant evidence as a reasonable mind might accept as adequate to support such findings, inferences, conclusions, or decisions, which such evidentiary standard shall be *in excess of the 'any evidence'* standard contained in other statutory provisions . . . ."[44]

At a bare minimum, then, the commissioner's order must establish that, in rejecting or modifying the hearing officer's factual findings, he is applying a standard "in excess of the any evidence standard." And here, neither Doctors nor the Department have identified any language in the commissioner's order suggesting that he did so. Additionally, although not defined in the CON Act, our Supreme Court has explained—in another context—that "[c]ompetent evidence is that which is

___

[44] (Emphasis supplied).

19

admissible."[45] Thus, regardless of the specific language used in his decision, the commissioner *must substantively* establish that he applied this statutorily required standard. This statutory directive is not about using "magic words," it is about satisfying an explicit evidentiary requirement.

In addition to the commissioner's failure to indicate whether he applied the mandatory evidentiary standard delineated in OCGA § 31-6-44 (k) (1), he also gave impermissible reasons for rejecting or deleting many of the hearing officer's findings of fact without first finding that they were unsupported by competent substantial evidence. For example, the commissioner rejected findings of fact 21-24 in their entirety, in part, because they "attempt[ed] to give historical context" of prior Department decisions and "promoted an opinion" that Doctors's CON application should not be approved. And those findings of fact by the hearing officer merely provided the procedural history of prior CON applications from 2012, which would either be supported by the evidence or not regardless of whether they ultimately related to the commissioner's legal conclusions. In a few instances, the commissioner did find that there was no "evidence" to support a particular factual finding or provided additional evidence he believed supported the Department's initial decision.

---

[45] *Guye v. Home Indem. Co.*, 241 Ga. 213, 215 (244 SE2d 864) (1978).

20

But holding that these conclusory statements satisfy the requirements of OCGA § 31-6-44 (k) (1) would render "competent" and "substantial" meaningless. Indeed, merely using the word "evidence" does not establish that, in substance, the commissioner actually applied the competent substantial evidence standard, as opposed to either the substantial evidence or any evidence standard. Needless to say, "courts should construe a statute to give sensible and intelligent effect to all of its provisions and should refrain, whenever possible, from construing the statute in a way that renders any part of it meaningless."[46]

Based on the foregoing, we conclude the commissioner violated OCGA § 31-6-44 (k) (1) because he did not find that *any* of the hearing officer's factual findings he rejected or modified were unsupported by "competent substantial evidence," much less do so with *particularity* in his written order; and he repeatedly based his rejection of factual findings on reasons related to conclusions of law. Thus, the trial court erred in finding otherwise. Nevertheless, despite the commissioner's disregard of OCGA § 31-6-44 (k) (1)'s requirements, we must nevertheless affirm the trial court's decision for the reasons noted in Division 2, *infra.*

---

[46] *West v. City of Albany*, 300 Ga. 743, 745 (797 SE2d 809) (2017) (punctuation omitted); *accord Footstar, Inc. v. Liberty Mut. Ins. Co.*, 281 Ga. 448, 450 (637 SE2d 692) (2006).

2. Doctors and the Department both contend the trial court's decision must be affirmed because, *inter alia*, AUMC was not prejudiced by the Department's final decision. Specifically, they contend that, even if the commissioner accepted all of the hearing officer's factual findings, the Department's ultimate decision would have been the same. Doctors also argues AUMC abandoned any argument that its rights were prejudiced by failing to raise that issue before the trial court or on appeal. We agree.

OCGA § 31-6-44.1 delineates the judicial standard of review of administrative decisions and provides six separate bases upon which a court is authorized to reverse or modify the final decision of an administrative agency.[47] But OCGA § 31-6-44.1 further provides that "the court may reverse or modify the final decision *only if* substantial rights of the appellant have been prejudiced."[48] And here, although AUMC did not raise the issue of prejudice in its petition for judicial review, the trial

---

[47] *See supra* note 26 & accompanying text.

[48] OCGA § 31-6-44.1 (emphasis supplied); *see Winder HMA, Inc.*, 303 Ga. App. at 59-60 (2) (holding that the trial court erred in reversing the Department's decision to grant a CON when there was little to no possible prejudice to the party opposing the CON).

court nevertheless ruled on it, finding that AUMC was not prejudiced by any purported errors made by the commissioner.[49]

Specifically, the trial court expressly found that AUMC was not prejudiced by any of the commissioner's alleged errors because, even if the commissioner reconsidered all of the hearing officer's findings of fact, his ultimate conclusions of law would have been the same. And on appeal, AUMC does not even mention the trial court's ruling in this regard, much less present a meaningful legal argument that it was erroneous.[50] Under such circumstances, AUMC has abandoned any argument

---

[49] *See Pfeiffer v. Ga. Dep't of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("[O]ur appellate courts are courts for the correction of errors of law committed in the trial court[,] [and] [r]outinely, this Court refuses to review issues not raised in the trial court." (footnote omitted)).

[50] In its reply brief to Doctors's appellee brief, AUMC argues that it was not required to use the "magic word 'prejudice'"and that it was "obviously" prejudiced by the Department's decision. But AUMC does not point to any substantive arguments in its initial brief remotely related to the issue of prejudice, and it provides no legal support for its apparent belief that this Court can assume it was prejudiced by the Department's decision. Lastly, to the extent AUMC attempts to raise this argument in its reply brief, our Supreme Court has held that "[a]n appellant who raises an argument for the first time in a reply brief is not entitled to have that argument considered." *City of Atlanta v. Mays*, 301 Ga. 367, 372 (3) (801 SE2d 1) (2017).

that its substantial rights were prejudiced by any errors made by the commissioner,[51] and thus, we are not authorized by OCGA § 31-6-44.1 to reverse the Department's final decision to grant Doctors a CON.[52]

Finally, in terms of our limited role as an appellate court, we take this opportunity to explain that declining to address an unbriefed and unargued issue is not simply a minor procedural matter that we are at liberty to disregard. As the Supreme Court of Georgia recently emphasized, appellate courts should not be in the business of addressing parties' abandoned arguments. Specifically, in *Davenport v.*

---

[51] *See Grogan v. City of Dawsonville*, 305 Ga. 79, 89 (4) n.7 (823 SE2d 763) (2019) (explaining that the Court will not address a potential issue or argument that appellant did not raise on appeal); *Robinson v. Robinson*, 239 Ga. 323, 324 (1) (236 SE2d 660) (1977) (deeming argument abandoned for purposes of appeal when it was not supported by argument or citation of authority as required by rules); *Flowers v. State*, 269 Ga. App. 443, 445 (1) (604 SE2d 285) (2004) ("As we have explained, legal analysis is, at a minimum, a discussion of the appropriate law as applied to the relevant facts." (punctuation omitted)); CT. APP. R. 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."); *see also* Stephen Louis A. Dillard, *Open Chambers Revisited: Demystifying the Inner Workings and Culture of the Georgia Court of Appeals*, 68 MERCER L. REV. 1, 7 (II) (2016) ("The quickest way to sabotage your appeal is to fail to substantiate legal arguments or key factual or procedural assertions.").

[52] *See Kennestone Hosp., Inc.*, 346 Ga. App. at 74 (holding, in a case involving a CON, that we apply the same standard of review as the trial court).

*State*,[53] our Supreme Court provided compelling reasons for abandoning its long-time practice of reviewing the sufficiency of the evidence to support a murder conviction (except in death penalty cases) when the issue was not raised on appeal.[54]

These reasons include that (1) our legal system provides for an adversarial process; (2) courts "sometimes make mistakes, and the risk of mistakes is at its highest when we consider an issue that no party has briefed or argued"; (3) "un-briefed and thus potentially flawed sufficiency holdings become precedent that stare decisis makes difficult to correct even when the issue is later considered more thoughtfully"; (4) addressing unbriefed and unargued claims of error "consumes a volume of judicial resources far out of proportion to the likely benefit"; and (5) "we ordinarily should respect strategic decisions by parties and their lawyers about what arguments to assert on appeal."[55] Ultimately, our Supreme Court advised that "it is almost always a better course to decide the appeal the parties bring us, rather than the

---

[53] 309 Ga. 385 (846 SE2d 83) (2020).

[54] *See id.* at 396 (4) (b) ("We cannot now identify a compelling reason to retain our current practice of sua sponte review of the sufficiency of the evidence in cases in which the appellant is not sentenced to death, and there are good reasons to abandon that practice.").

[55] *See id.* at 397-98 (4) (b).

25

appeal we might have brought were we in counsel's shoes."[56] Suffice it to say, we find the Supreme Court's reasoning in *Davenport* equally persuasive in this jurisprudential context.

3. Finally, given our holding in Division (2) *supra* that we are unauthorized to reverse the Department's final decision to grant Doctors a CON to build an FSED, we need not address AUMC's remaining arguments, all of which challenge the commissioner's conclusions of law and application of the CON Act's general review considerations.

For all these reasons, we affirm the trial court's decision, affirming the Department's grant of a CON to Doctors.

*Judgment affirmed. Mercier and Markle, JJ., concur in judgment only*.

---

[56] *Id.* at 398 (4) (b). We take this opportunity to remind litigants that the "requirements as to the form of appellate briefs were created, not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court." *Daker v. State*, 300 Ga. 74, 76 (2) (792 SE2d 382) (2016) (punctuation omitted); *accord Daniel v. Allstate Ins. Co.*, 290 Ga. App. 898, 900-01 (1) (660 SE2d 765) (2008).