**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 26, 2022**

# In the Court of Appeals of Georgia

A22A1013. GEORGIA DEPARTMENT OF COMMUNITY HEALTH v. HOUSTON HOSPITALS, INC.

A22A1014. COLISEUM MEDICAL CENTER, LLC v. HOUSTON HOSPITALS, INC.

A22A1249. GEORGIA DEPARTMENT OF COMMUNITY HEALTH v. THE MEDICAL CENTER OF PEACH COUNTY, INC. d/b/a MEDICAL CENTER OF PEACH COUNTY, NAVICENT HEALTH.

A22A1250. COLISEUM MEDICAL CENTER, LLC v. THE MEDICAL CENTER OF PEACH COUNTY, INC. d/b/a MEDICAL CENTER OF PEACH COUNTY, NAVICENT HEALTH.

DILLARD, Presiding Judge.

These consolidated appeals arise from the Georgia Department of Community Health's grant of a certificate of need to Coliseum Medical Center, LLC, which Coliseum applied for to establish a free standing emergency department in Houston County. Several nearby hospitals, including the appellees, opposed the project and

Coliseum's CON application. And following the Department's decision (which was issued by its commissioner), Houston Hospitals, Inc. sought judicial review of that decision in the Superior Court of Houston County, while the Medical Center of Peach County, Inc. d/b/a Medical Center of Peach County, Navicent Health sought judicial review of the same agency decision in the Superior Court of Peach County. Both trial courts granted judicial review of the commissioner's decision and reversed it, effectively denying Coliseum's CON application.[1]

In Case Nos. A22A1013 and A22A1014 (the "Houston County cases"), the Department and Coliseum, respectively, appeal the Houston County court's reversal of the Department's decision to grant a CON to Coliseum. And in related Case Nos. A22A1249 and A22A1250 (the "Peach County cases"), the Department and Coliseum, respectively, appeal the Peach County court's decision to do the same.

---

[1] For ease of reference and the sake of clarity, we refer to the Georgia Department of Community Health as the "Department," Coliseum Medical Center, LLC as "Coliseum," Houston Hospitals, Inc. as "Houston," the Superior Court of Houston County as the "Houston County court," the Medical Center of Peach County, Inc. d/b/a Medical Center of Peach County, Navicent Health as "Navicent Health," the Superior Court of Peach County as the "Peach County court," a certificate of need as a "CON," and a free standing emergency department as an "FSED." Additionally, we note that Marsha A. Hopkins drafted and signed the Department's final decision on behalf of its commissioner, Frank Berry. So, although Hopkins drafted and signed the Department's decision, we refer to the commissioner throughout this opinion with the pronouns he/him/his.

While these appeals arise from two separate trial court orders issued in different counties, they all require our review of the same decision by the Department to grant Coliseum a CON for its proposed FSED. In several separate claims of error, both the Department and Coliseum essentially argue the Houston and Peach County courts erred by (1) failing to apply the proper judicial standard of review to the Department's decision, including the failure to afford sufficient deference to the commissioner's findings of fact and conclusions of law; (2) misinterpreting the scope of the commissioner's statutory and regulatory authority; and (3) finding that certain unappealed lower-level agency decisions issued in 2012 were precedential and binding on the Department and its commissioner in these proceedings. For the reasons set forth *infra*, we vacate the orders of both the Houston and Peach County courts and remand the cases to those courts with direction.[2]

*I. Statutory and Regulatory Framework.*

Before detailing the underlying factual and procedural background, it is instructive to first review the statutory and regulatory framework pertinent to

[2] Oral argument was held in these consolidated appeals on August 3, 2022, and is archived on the Court's website. *See* Court of Appeals of State of Georgia, Oral Argument, Case Nos. A22A1013, A22A1014, A22A1249, A22A1250. (Aug. 3, 2022), available at https://vimeo.com/736878356 .

evaluating CON applications. The State Planning and Development Act—which is codified at OCGA § 31-6-40 *et seq.* (the "CON Act")—"establishes a comprehensive system of planning for the orderly development of adequate healthcare services throughout the state."[3] To this end, OCGA § 31-6-40 (a) provides that "[o]n and after

---

[3] *Drs. Hosp. of Augusta, LLC v. Dep't of Cmty. Health*, 356 Ga. App. 428, 429 (847 SE2d 614) (2020) (punctuation omitted); *accord Palmyra Park Hosp., Inc. v. Phoebe Sumter Med. Ctr.*, 310 Ga. App. 487, 488 (714 SE2d 71) (2011); *see* OCGA § 31-6-1 ("The policy of this state and the purposes of this chapter are to ensure access to quality health care services and to ensure that health care services and facilities are developed in an orderly and economical manner and are made available to all citizens and that only those health care services found to be in the public interest shall be provided in this state."); *see also Diversified Health Mgmt. Servs., Inc. v. Visiting Nurses Ass'n of Cordele, Inc.*, 254 Ga. 500, 502 (4) (330 SE2d 885) (1985) ("[T]he purpose of the [CON] Act is the development of health care services and facilities in an orderly and economic fashion, and it is not a mechanism for determination of the respective rights of competitors."). *But see Premier Health Care Invs., LLC v. UHS of Anchor, L.P.*, 310 Ga. 32, 54 n.24 (849 SE2d 441) (2020) (noting that "this Court has already suggested that OCGA § 31-6-40 (a) may be pressing the outer limits of the General Assembly's constitutional authority to regulate the healthcare industry further . . . ."); Adam Griffin, *Protecting Economic Liberty in the Federal Courts: Theory, Precedent, Practice*, 22 Fed. Soc. Rev. 232, 241 (2021) ("CON laws unconstitutionally discriminate between healthcare providers and infringe their rights to earn a living under the 14th Amendment . . . under both the Due Process and Equal Protection Clauses."); *Tiwari v. Friedlander*, 2020 WL 4745772, *2 (W.D. Ky. 2020) (noting evidence in that case included "four decades of academic and government studies saying Certificate of Need laws accomplish nothing more than protecting monopolies held by incumbent companies . . . [and that] these laws *worsen* the problems of cost, access, and quality of care that the laws are supposed to help fix. If requiring a Certificate of Need for a home health company worsens all problems it purports to fix, the law is irrational. And if it's irrational, it's unconstitutional.").

4

July 1, 2008, any new institutional health service shall be required to obtain a [CON] . . . ." And these services include, *inter alia*, "[t]he construction, development, or other establishment of a new, expanded, or relocated health care facility . . . ."[4] Particularly relevant here, in 2019, the General Assembly amended the CON Act's definition of "health care facility" to include "freestanding emergency departments or facilities not located on a hospital's primary campus."[5]

Of course, in determining whether the Department was authorized to promulgate a rule to create a category of "new institutional health service" requiring a CON, "we first look to the relevant legal texts."[6] And those include a "comprehensive statutory scheme defining and establishing the CON program, as well as regulations the Department has promulgated with respect to CONs."[7] As a

---

[4] OCGA § 31-6-40 (a) (1).

[5] OCGA § 31-6-2 (17); *see* former OCGA § 31-6-2 (17) (2018) (defining "health care facility" without including FSEDs); *Premier Health Care Invs., LLC*, 310 Ga. at 36 (2) (a) (acknowledging that "[t]he enumerated list of new institutional health services that require a CON has changed over time").

[6] *Premier Health Care Invs. LLC*, 310 Ga. at 35 (2).

[7] *Id.*

5

result, the statutory framework that "sets forth the CON program is not the only text relevant to our inquiry."[8] Indeed,

> to administer the [CON] program, the Department is authorized to adopt, promulgate, and implement rules and regulations sufficient to administer the [CON] program, to establish, by rule, need methodologies for new institutional health services and health care facilities . . . .[9]

As to the administrative process for obtaining a CON to build a new healthcare facility in Georgia (such as the FSED proposed by Coliseum), a party must first submit an application with the Department.[10] Then, the Department reviews the application and "all written information submitted by the applicant . . . and all information submitted in opposition to the application to determine the extent to which the proposed project is consistent with the applicable considerations"[11]

---

[8] *Id*. at 37 (2) (b).

[9] *Id.* (quoting OCGA § 31-6-21).

[10] *See* OCGA § 31-6-40 (b) ("Any person proposing to develop or offer a new institutional health service or health care facility shall, before commencing such activity, submit a letter of intent and an application to the [D]epartment and obtain a [CON] in the manner provided in this chapter unless such activity is excluded from the scope of this chapter.").

[11] OCGA § 31-6-43 (g).

6

delineated in the statutory and regulatory scheme governing CONs.[12] And following this review, the Department "provide[s] written notification to an applicant of [its] decision to issue or to deny issuance of a [CON] for the proposed project."[13]

Next, any party opposing the Department's initial so-called desk decision may request an administrative appeal to the Certificate of Need Appeal Panel, which is a separate administrative agency responsible for conducting a review of the Department's initial decision through a designated hearing officer.[14] And once

---

[12] *See* OCGA § 31-6-21 (b) (4) (authorizing the Department "[t]o adopt, promulgate, and implement rules and regulations sufficient to administer" the CON program); OCGA § 31-6-42 (a) (1)-(17) (listing general review considerations for the grant or denial of a CON); Ga. Comp. R. & Regs. r. 111-2-2.09 (1) (a)-(q) (same).

[13] OCGA § 31-6-43 (i).

[14] *See* OCGA § 31-6-44 (a) ("Effective July 1, 2008, there is created the Certificate of Need Appeal Panel, which shall be an agency separate and apart from the [D]epartment and shall consist of a panel of independent hearing officers. The purpose of the appeal panel shall be to serve as a panel of independent hearing officers to review the [D]epartment's initial decision to grant or deny a certificate of need application."); OCGA § 31-6-44 (d) ("Any party that is permitted to oppose an application pursuant to paragraph (2) of subsection (d) of Code Section 31-6-43 that has notified the [D]epartment prior to its decision that such party is opposed to the application before the [D]epartment shall have the right to an initial administrative appeal hearing before an appeal panel hearing officer or to intervene in such hearing."); OCGA § 31-6-44 (f) ("The appeal hearing conducted by the appeal panel hearing officer shall be a de novo review of the decision of the [D]epartment.").

7

appointed, the hearing officer conducts a full evidentiary hearing on the matter.[15] Specifically, the hearing officer must decide whether, "in the hearing officer's judgment, the application is consistent with the considerations as set forth in Code Section 31-6-42 and the [D]epartment's rules, as the hearing officer deems such considerations and rules applicable to the review of the project."[16] Subsequently, "[w]ithin 30 days after the conclusion of the hearing, the hearing officer shall make written findings of fact and conclusions of law as to each consideration as set forth in Code Section 31-6-42 and the [D]epartment's rules, including a detailed statement of the reasons for the decision of the hearing officer."[17] If no party appeals to the commissioner, the hearing officer's ruling becomes the Department's final agency decision.[18]

---

[15] *See* OCGA § 31-6-44 (e) ("In fulfilling the functions and duties of this chapter, the hearing officer shall act, and the hearing shall be conducted as a full evidentiary hearing."); OCGA § 31-6-44 (g) ("All evidence shall be presented at the initial administrative appeal hearing conducted by the appointed hearing officer.").

[16] OCGA § 31-6-44 (f).

[17] OCGA § 31-6-44 (i).

[18] *See* OCGA § 31-6-44 (j) ("The decision of the appeal panel hearing officer will become the final decision of the [D]epartment upon the sixty-first day following the date of the decision unless an objection thereto is filed with the commissioner within the time limit established in subsection (i) of this Code section.").

But any party, including the Department, "which disputes any finding of fact or conclusion of law rendered by the hearing officer in such hearing officer's decision and which wishes to appeal that decision may appeal to the commissioner . . . ."[19] If a party does so, the decision of the commissioner "shall become the [D]epartment's final decision by operation of law."[20] And in such an appeal,

> the commissioner may adopt the hearing officer's order as the final order of the [D]epartment or the commissioner may reject or modify the conclusions of law over which the [D]epartment has substantive jurisdiction and the interpretation of administrative rules over which it has substantive jurisdiction.[21]

The scope of the commissioner's authority and review defined in OCGA § 31-6-44 (k) (1) is particularly relevant to the issues presented in these appeals. Specifically,

> [b]y rejecting or modifying [a hearing officer's] conclusion of law or interpretation of administrative rule, the [D]epartment must state with particularity its reasons for rejecting or modifying such conclusion of law or interpretation of administrative rule and must make a finding that

---

[19] OCGA § 31-6-44 (i).

[20] OCGA § 31-6-44 (m).

[21] OCGA § 31-6-44 (k) (1).

9

its substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that which was rejected or modified.[22]

Further, a commissioner's "[r]ejection or modification of conclusions of law may not form the basis for rejection or modification of findings of fact."[23] Lastly,

[t]he [C]ommissioner may not reject or modify the findings of fact unless the commissioner first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon any competent substantial evidence or that the proceedings on which the findings were based did not comply with the essential requirements of law.[24]

Following the commissioner's decision, "[a]ny party to the initial administrative appeal hearing conducted by the appointed appeal panel hearing officer, excluding the [D]epartment, may seek judicial review of the final decision. . . ."[25] And during such review,

the court may reverse or modify the final decision only if substantial rights of the appellant have been prejudiced because the procedures

---

[22] *Id.*

[23] *Id.*

[24] OCGA § 31-6-44 (k) (1).

[25] OCGA § 31-6-44.1 (a).

10

followed by the [D]epartment, the hearing officer, or the commissioner or the administrative findings, inferences, and conclusions contained in the final decision are:

(1) [i]n violation of constitutional or statutory provisions;

(2) [i]n excess of the statutory authority of the [D]epartment;

(3) [m]ade upon unlawful procedures;

(4) [a]ffected by other error of law;

(5) [n]ot supported by substantial evidence, which shall mean that the record does not contain such relevant evidence as a reasonable mind might accept as adequate to support such findings, inferences, conclusions, or decisions, which such evidentiary standard shall be in excess of the 'any evidence' standard contained in other statutory provisions; *or*

(6) [a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.[26]

---

[26] OCGA § 31-6-44.1 (a) (1)-(6).

11

Upon further discretionary appeal to *this* Court, "[w]e apply the same standards of judicial review when considering the superior court's decision on appeal."[27] Importantly, our duty is not to "review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency."[28] Further, we are generally charged with treating the Department's final decision with deference because "agencies provide a high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches."[29] But importantly, *we only* "defer to an agency's interpretation . . . when we are unable to determine the meaning of the legal text at issue."[30]

---

[27] *ASMC, LLC v. Northside Hosp. Inc.,* 344 Ga. App. 576, 581 (810 SE2d 663) (2018); *see Kennestone Hosp., Inc. v. Dep't of Cmty. Health*, 346 Ga. App. 70, 74 (815 SE2d 266) (2018) (holding, in a case involving a CON, that we apply the same standard of review as the trial court).

[28] *Ne. Ga. Med. Ctr., Inc. v. Winder HMA, Inc.*, 303 Ga. App. 50, 55 (2) (693 SE2d 110) (2010) (punctuation omitted); *accord Eagle W., LLC v. Ga. Dep't of Transp.*, 312 Ga. App. 882, 885 (720 SE2d 317) (2011).

[29] *Ne. Ga. Med. Ctr., Inc.*, 303 Ga. App. at 56 (2) (b) (punctuation omitted); *see Dep't of Cmty. Health, Div. of Health Plan. v. Gwinnett Hosp. Sys., Inc.,* 262 Ga. App. 879, 882 (586 SE2d 762) (2003) ("[T]he interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight and deference." (punctuation omitted)). *But see infra* note 59.

[30] *City of Guyton v. Barrow*, 305 Ga. 799, 802 (2) (828 SE2d 366) (2019).

*II. The Relevant Hospitals.*

Turning to the medical facilities at issue, the record shows Coliseum is a 310-bed acute care hospital located in Macon, Georgia, which is in Bibb County. Coliseum's hospital has a 25-bed emergency department that provides emergency services to both Houston and Bibb county residents. And Coliseum's parent company, HCA, Inc., is a large, for-profit healthcare system that owns and operates hospitals, FSEDs, and Urgent Care Centers ("UCCs") throughout the United States.

As to the parties opposing Coliseum's CON application, Houston operates two nonprofit acute care hospitals in Houston County: (1) Houston Medical Center, which has 247 hospital beds; and (2) Perry Hospital, which has 35 hospital beds.[31] HMC is a teaching hospital with a full-service, 31-bed emergency department, as well as a Rapid Medical Evaluation Treatment ("RMET") area that can serve up to 40 lower-acuity patients.[32] HMC also operates four UCCs in Houston County. Additionally,

---

[31] We refer to Houston Medical Center as "HMC" and Perry Hospital as "Perry" throughout this opinion.

[32] "Patient acuity means the measure of a patient's severity of illness or medical conditions including, but not limited to, the stability of physiological and psychological parameters and the dependency needs of the patient and the patient's family. Higher patient acuity requires more intensive nursing time and advanced nursing skills for continuous surveillance. . . . Patient acuity [also] means the complexity of patient care needs requiring the skill and care of nursing staff." Law

13

Perry offers a full-service emergency department with nine beds, as well as a RMET area that can serve six lower-acuity patients.

The Medical Center of Peach County,[33] which is part of the Navicent Health healthcare system, is a 25-bed hospital. Peach has a 14-bed emergency department with two trauma/cardiac rooms. Finally, Navicent Health—the largest hospital at issue—has 637 beds and 87 treatment spaces in its general and pediatric emergency departments.

### III. Administrative Proceedings.

On January 21, 2020, Coliseum filed an application for a CON with the Department's Division of Health Planning to build its proposed FSED. Specifically, the application described the project as an FSED[34] to be located in Bonaire, Georgia,

Insider Dictionary, *Patient Acuity Definition*, available at https://www.lawinsider.com/dictionary/patient-acuity (last visited Oct. 17, 2022). And lower-acuity patients are "those that are semiurgent or non-urgent according to [certain] validated tools . . . ." National Library of Medicine, *Statewide Retrospective Study of Low Acuity Emergency Presentations in New South Wales, Australia: who, what, where and why?* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4874101/ (last visited Oct. 25, 2022).

[33] We refer to The Medical Center of Peach County as "Peach" throughout this opinion.

[34] Although Coliseum's application indicated that the project was to build a "hospital" that would provide "EMERGENCY MEDICAL [SERVICES]

which is in Houston County. According to the application, Coliseum planned to "expand its emergency service by building [an FSED]" more than 20 miles away from its hospital's main campus. Coliseum sought to construct a 12,760 square-foot facility on approximately 6.61 acres of land. And the "primary components" of the facility would include one trauma room, one secured holding room, one bariatric exam room, one isolation room, one triage room, eight general exam rooms, computerized tomography (CT Scans), general radiology, laboratory services, a reception area, a patient and family waiting area, an ambulance entrance and vestibule, a nurses station, and space for support staff.

On June 9, 2020, several months after Coliseum submitted its application for the CON, the Department issued a desk decision, granting it and issuing the requested CON. As hospitals that provide "substantially similar services" nearby or within the Coliseum FSED's proposed services area,[35] Houston, Peach, and Navicent Health

<hr>

(freestanding)[,]" including CT scans, it is undisputed that the proposed project would qualify as an FSED under the CON Act and would *not* be located on a hospital campus.

[35] *See* OCGA § 31-6-43 (d) (2) (A) ("No party may oppose an application for a certificate of need for a proposed project unless . . . [s]uch party offers substantially similar services as proposed within a 35 mile radius of the proposed project or has a service area that overlaps the applicant's proposed service area . . . .").

15

appealed the Department's decision to the CON Appeals panel. In that appeal, the designated hearing officer conducted the evidentiary hearing remotely and also reviewed videotaped depositions. The hearing officer ultimately issued a 26-page decision with detailed findings of fact and conclusions of law, reversing the Department's initial desk decision and denying Coliseum's CON application because, in his view, the proposed FSED was inconsistent with many of the general review considerations for evaluating a CON application.

Thereafter, Coliseum appealed the hearing officer's ruling to the Department's commissioner, who issued the Department's final decision. In that appeal, the commissioner reversed the hearing officer's decision to deny Coliseum's CON application. In his final order, the commissioner rejected or modified over half of the hearing officer's findings of fact for various specified reasons. The commissioner also rejected several of the hearing officer's legal conclusions as flawed. The Department ultimately granted Coliseum's CON application to build an FSED in Bonaire.

*IV. Judicial Review.*

Following the Department's decision, Houston sought judicial review in the Houston County court, and Navicent Health sought the same in the Peach County court. Both trial courts reversed the commissioner's decision, effectively denying

16

Coliseum's requested CON. Further, both courts concluded the commissioner erred by failing to follow four precedential desk decisions from 2012, all of which denied CON applications to construct FSEDs. Additionally, both courts found the commissioner failed to satisfy the statutory requirement that, in order to reject or modify the hearing officer's findings of fact, he must first state with particularity in his written order that (1) the fact at issue was not based on competent substantial evidence; or (2) the proceedings upon which the findings were based did not comply with the essential requirements of law. We granted discretionary review as to each court's order, and these four consolidated appeals follow.

*V. Case Nos. A22A1013 and A22A1014 - The Houston County cases.*

Because the primary arguments raised by the Department and Coliseum in the Houston County cases are substantially similar, we address them together to the extent possible and individually when necessary.

On appeal to this Court, we review the Department's final decision regarding whether to grant a CON, rather than the trial court's judgment.[36] Nevertheless, a

[36] *See Ne. Ga. Med. Ctr., Inc.*, 303 Ga. App. at 55 (2) ("[W]hen this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency."(punctuation omitted)); *Pro. Standards Comm'n v. Valentine*, 269 Ga. App. 309, 312 (603 SE2d

17

central argument raised by both the Department and Coliseum is that the trial court failed to apply the proper judicial standard of review when reversing the Department's final decision and improperly limited the scope of the commissioner's statutory authority in reversing the hearing officer's decision. As a result, we must address these threshold issues before turning to the substance of the Department's final decision.

Both the judicial standard of review of the Department's final decision, as well as the scope of the commissioner's authority during the administrative process, are codified in the CON Act. And in construing statutes, agency rules, and regulations, we "employ the basic rules of statutory construction and look to the plain language [of the provision in question] to determine its meaning."[37] In doing so, we must construe the statute, rule, or regulation "according to its own terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some

792) (2004) (same).

[37] *Upper Chattahoochee Riverkeeper, Inc. v. Forsyth Cnty*., 318 Ga. App. 499, 502 (1) (734 SE2d 242) (2012); *accord Emory Univ. v. Kennestone Hosp., Inc*., 364 Ga. App. 583, 588-89 (2) (ii) (A) (876 SE2d 21) (2022).

language mere surplusage."[38] Still, even if words are apparently plain in meaning, they "must not be read in isolation and instead, must be read in the context of the [statute, rule, or] regulation as a whole."[39]

And importantly, we only "defer to an agency's interpretation . . . when we are unable to determine the meaning of the legal text at issue."[40] As a result, when a statute is "not ambiguous after we apply canons of statutory construction[,] . . . [o]ur case law . . . does not support any deference to the Department's interpretation of the relevant CON statutes, or to its interpretation of its own unambiguous regulations."[41] Here, none of the parties have argued OCGA § 31-6-44 (k) (1) is ambiguous or

---

[38] *New Cingular Wireless PCS, LLC v. Ga. Dep't of Revenue*, 303 Ga. 468, 472 (2) (813 SE2d 388) (2018) (punctuation omitted); *accord Lyman v. Cellchem Int'l Inc.*, 300 Ga. 475, 477 (796 SE2d 255) (2017).

[39] *Upper Chattahoochee Riverkeeper*, 318 Ga. App. at 502 (1); *accord Pfeiffer v. Dep't of Transp.*, 250 Ga. App. 643, 646 (2) (551 SE2d 58) (2001); *see also New Cingular Wireless PCS*, 303 Ga. at 472 (2) ("In this regard, in construing language in any one part of a statute [or regulation], a court should consider the entire scheme of the statute [or regulation] and attempt to gather the [codified] legislative intent from the [text of] statute [or regulation] as a whole." (punctuation omitted)).

[40] *City of Guyton*, 305 Ga. at 802 (2). *But see infra* note 59.

[41] *Premier Health Care Invs.*, 310 Ga. at 38 (3) (a) n.5.

19

contended that we are unable to determine its meaning.[42] So, under these circumstances, we owe no deference to the Department. With these guiding canons of construction in mind, we turn now to the parties' arguments regarding the statutory and regulatory authorities at issue.

(1) In Case No. A22A1013, the Department contends the trial court misconstrued both the judicial standard of review of its final decision, as well as the scope of the commissioner's authority in rejecting or modifying the hearing officer's findings of fact and conclusions of law. And in Case No. A22A1014, Coliseum raises similar claims of error. We disagree with both of them..

As to the applicable judicial review of the Department's decision under the CON Act, OCGA § 31-6-44.1 (a) provides six separate bases, listed disjunctively, upon which a court is authorized to modify or reverse the Department's final decision regarding a CON application. As previously mentioned, that statute provides,

> the court may reverse or modify the [Department's] final decision only
> if substantial rights of the appellant have been prejudiced because the
> procedures followed by the [D]epartment, the hearing officer, or the

---

[42] In its brief, Coliseum expressly states that this appeal does not involve the interpretation of any *ambiguous* statutes or agency rules.

20

commissioner or the administrative findings, inferences, and conclusions contained in the final decision are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the [D]epartment;

(3) Made upon unlawful procedures; [or]

(4) Affected by other error of law.

(5) Not supported by substantial evidence, which shall mean that the record does not contain such relevant evidence as a reasonable mind might accept as adequate to support such findings, inferences, conclusions, or decisions, which such evidentiary standard shall be in excess of the "any evidence" standard contained in other statutory provisions; *or*

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.[43]

And here, the trial court based its reversal of the Department's decision to grant the CON to Coliseum on OCGA § 31-6-44.1 (a) (1)-(4); but given the use of the word "or" in this statute, the trial court was authorized to reverse the Department's decision if any *one* of the six provisions applied.[44]

---

[43] (Emphasis supplied).

[44] *See Haugen v. Henry Cty.* 277 Ga. 743, 744-45 (2) (594 SE2d 324) (2004) ("The natural meaning of 'or,' where used as a connective, is to mark an alternative and present choice, implying an election to do one of two things." (punctuation

The trial court found the first three criteria in OCGA § 31-6-44.1 (a) were satisfied because the commissioner violated and exceeded his authority under OCGA § 31-6-44 (k) (1), which provides, in relevant part,

> [t]he commissioner *may not* reject or modify the findings of fact [of the hearing officer] unless the commissioner first determines from a review of the entire record, and *states with particularity in the order*, that the findings of fact were not based upon any *competent substantial evidence* or that the proceedings on which the findings were based did not comply with the essential requirements of law.[45]

omitted)); *Gearinger v. Lee*, 266 Ga. 167, 169 (2) (465 SE2d 440) (1996) ("[W]here a legislative provision is phrased in the disjunctive, it must be so construed absent a clear indication that a disjunctive construction is contrary to the [codified] legislative intent."); *Tyler v. State*, 247 Ga. 119, 124 (3) (274 SE2d 549) (1981) ("It is not required that the trier of fact find the existence of each disjunctive phrase of the statute. It must be shown simply that the evidence is sufficient to satisfy the first major component of the statutory aggravating circumstance and at least one sub-part of the second component, as hereinafter set forth." (punctuation omitted)). In this Division, only OCGA § 31-6-44.1 (a) (1)-(3) are at issue.

[45] (Emphasis supplied). Coliseum complains the trial court did not mention whether the underlying administrative proceedings complied with the "essential requirements of law," which is one basis for reversing the Department's final decision. *See* OCGA § 31-6-44 (k) (1) (quoted *supra*). But none of the parties to these cases have ever maintained there was anything illegal about the underlying administrative *proceedings*. Thus, there was no reason for the trial court to address that issue. Regardless, Coliseum concedes that such a finding is only one of two bases upon which the trial court can reverse the Department's decision, and here, the court did not find that the underlying proceedings failed to comply with the law.

22

Specifically, the trial court determined the commissioner modified or rejected more than half of the hearing officer's findings of fact without ever stating, with particularity or otherwise, that those findings were not supported by "competent substantial evidence." The court then went on to provide several examples of instances in which the commissioner failed to do so.

The trial court further found the commissioner violated OCGA § 31-6-44 (k) (1) because, under its terms, "[r]ejection or modification of conclusions of law *may not form the basis for* rejection or modification of findings of fact[,]"[46] and the commissioner rejected or modified many of the hearing officer's factual findings based on his determination that the hearing officer's legal conclusions were erroneous. The court again provided several examples from the commissioner's decision to support this finding. Additionally, the court held that several of the commissioner's conclusions of law were erroneous because they were based on findings of fact he improperly rejected in violation of the scope of his review under OCGA § 31-6-44 (k) (1). Then, applying the judicial standard of review for reversing the Department's final decision, the court found the "[c]ommissioner's procedures

---

[46] (Emphasis supplied).

and his [f]inal [o]rder were contrary to the CON Act's statutory provisions, in excess of his authority, [and] made upon unlawful procedures . . . ."

Our review of the commissioner's decision, the underlying administrative proceeding, and the record as a whole supports the trial court's findings. To begin with, the only instance in the commissioner's 16-page order that includes the phrase "competent substantial evidence" is when he quotes OCGA § 31-6-44 (k) (1) as the standard of review at the outset of his decision. Indeed, instead of considering whether competent substantial evidence—or even any evidence at all—supported the hearing officer's findings of fact, the commissioner provided a myriad of *other* reasons for disregarding or rejecting most of those findings—some of which were impermissibly based on his rejection of the hearing officer's legal conclusions.

OCGA § 31-6-44 (k) (1) expressly forbids the commissioner from basing the modification or rejection of factual findings on the "[r]ejection or modification of conclusions of law . . . ." But the commissioner repeatedly did just that. For example, the commissioner found that, while the hearing officer's findings of fact 4, 13, and 17 were "properly in the record[,]" they "*[led] to a faulty conclusion of law.*"[47] And in rejecting the factual findings detailed in those paragraphs, the commissioner

_____

[47] (Emphasis supplied).

24

concluded that they were a "thinly veiled attempt to blur the distinctions among hospital emergency departments (EDs), FSEDs, and . . .[UCCs]"; but he never stated whether those facts were supported by the evidence—competent, substantial, or otherwise.

Further, as to the hearing officer's finding of fact number 30, the commissioner determined that, although "the *record* and *testimony acknowledge[d]* the overlap of many of the diagnosis treated in EDs, FSEDs, and UCCs,"[48] UCCs are not a viable alternative to FSEDs and should not be taken into account when evaluating the need for Coliseum's FSED under the general review considerations. The commissioner also struck two sentences in one paragraph containing several factual findings because they ignored parts of the record, not because they were unsupported by competent substantial evidence. The commissioner further found the hearing officer's findings of fact numbers 35-36 related to the "Effects on Payers Rule[,]"[49] and for "reasons concerning [UCCs], the fact statement contained in [f]inding of [f]act 36

---

[48] (Emphasis supplied).

[49] *See* OCGA § 31-6-42 (a) (5) (listing as a general review consideration whether "[t]he effects of new institutional health service on payors for health services, including governmental payors, are not unreasonable . . . .").

25

regarding lower cost charges at UCCs is not relevant and is misleading."[50] But whether a fact is misleading or irrelevant depends entirely upon the conclusions of law to which they would or would not relate to.[51]

As to the hearing officer's factual finding number 22 that there was a downward trend in utilization of emergency services (despite population growth in the proposed service area), the commissioner found an *argument* made by Coliseum to be "more persuasive." But OCGA § 31-6-44 (k) (1) does not permit the commissioner to reject the hearing officer's findings of fact based on arguments, as arguments relate to legal conclusions, not facts. Essentially, the commissioner rejected many of the hearing officer's *findings of fact* regarding the types of existing healthcare services already available in the proposed service area provided by

_____

[50] (Emphasis supplied).

[51] (Emphasis supplied). We are not suggesting the commissioner is unable to reach different *legal conclusions* than those of the hearing officer. Indeed, under OCGA § 31-6-44 (k) (1), when rejecting or modifying a conclusion of law or interpretation of administrative rule, the Department must "state with particularity its reasons for rejecting or modifying such conclusion of law or interpretation of administrative rule and must make a finding that its substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that which was rejected or modified." But before doing so, the CON Act requires the commissioner to *first* determine which of the hearing officer's *factual findings*—irrelevant, misleading, or otherwise—are supported by competent substantial evidence. And again, he must explain this requisite determination with particularity in his order.

hospital emergency rooms and UCCs, as well as the population's need for additional emergency services, because he rejected the hearing officer's *legal conclusions* that those facts were relevant to general review consideration regarding existing services.[52] In doing so, the commissioner violated and exceeded the scope of his authority under OCGA § 31-6-44 (k) (1).

Although Coliseum argues that "form over nomenclature" controls, and the Department contends the commissioner was not required to "recite the 'competent substantial evidence standard[,]'"[53] they point to no other language in the commissioner's decision suggesting that he complied with the evidentiary standard

---

[52] *See* OCGA § 31-6-42 (a) (3) (listing as a general review consideration "[e]xisting alternatives for providing services in the service area *the same* as *the new institutional health service proposed* are neither currently available, implemented, similarly utilized, nor capable of providing a less costly alternative, or no certificate of need to provide such alternative services has been issued by the [D]epartment and is currently valid . . ." (emphasis supplied)).

[53] *See, e.g.*, *Glass v. Faircloth*, 363 Ga. App. 232, 235 (1) (871 SE2d 69) (2022) ("Pleadings, motions, and orders are construed according to their substance and function and not merely by nomenclature." (punctuation omitted)); *Byrom v. Douglas Hosp., Inc.*, 338 Ga. App. 768, 772 (2) n.2 (792 SE2d 404) (2016) ("[W]e are bound by the substance, not nomenclature, of claims, and we should construe pleadings to bring about substantial justice.").

required by OCGA § 31-6-44 (k)(1).[54] Importantly, the phrase "competent substantial evidence" is a term of art with a specific meaning. Indeed, "[s]ubstantial evidence"—which is a portion of the statutory phrase at issue—is defined in the CON Act; and OCGA § 31-6-44.1 (a) (5) explains that a finding of fact is

> [n]ot supported by substantial evidence . . . [when] the record does not contain such relevant evidence as a reasonable mind might accept as adequate to support such findings, inferences, conclusions, or decisions, which such evidentiary standard shall be *in excess of the 'any evidence'* standard contained in other statutory provisions . . . ."[55]

At a bare minimum, then, the commissioner's order must establish that, in rejecting or modifying the hearing officer's factual findings, he is applying a standard "in excess of the any evidence standard." Neither Coliseum nor the Department have

---

[54] Citing our recent decision in *Drs. Hosp. of Augusta, LLC v. Dep't of Cmty. Health*, 356 Ga. App. 428 (847 SE2d 614) (2020), Coliseum argues the trial court erred by focusing on the commissioner's words "in a vacuum[,]" rather than "what the decision did as a whole." But in that case, we addressed whether, considering the commissioner's decision as a whole, he adequately addressed the "existing alternatives" general review consideration. *See Drs. Hosp. of Augusta, LLC*, 356 Ga. App. at 435 (3). In contrast, the issue here is whether the commissioner satisfied the plain and unambiguous requirements of OCGA § 31-6-44 (k) (1).

[55] (Emphasis supplied).

28

identified any language in the commissioner's order suggesting that he did.[56]

Additionally, although not defined in the CON Act, our Supreme Court has explained—in another context—that "[c]ompetent evidence is that which is admissible."[57] Thus, regardless of the specific language used in his decision, the commissioner *must substantively* establish that he applied this statutorily required standard. This statutory directive is not about using "magic words," it is about satisfying an explicit evidentiary requirement.

So, before rejecting or modifying a hearing officer's findings of fact, the commissioner must first determine with *particularity* that those findings of fact are not supported by "competent substantial evidence," which is the only way for him to demonstrate that he faithfully applied the statutorily imposed evidentiary standard.

---

[56] Not only did the commissioner fail to use any language suggesting that he applied the competent substantial evidence standard, he failed to use the word "evidence" in rejecting or modifying any of the hearing officer's factual findings. Indeed, the only instances in which the commissioner used the word "evidence" was when he (1) quoted OCGA § 31-6-44 (k) (1); and (2) made general statements that he had reviewed the evidence in the record. Thus, it is impossible for this Court to determine whether he applied the competent substantial evidence standard, as opposed to the substantial evidence or any evidence standards. In fact, it unclear whether he applied any evidentiary standard because he never found that even one of the factual findings he rejected or modified was unsupported by evidence of any kind.

[57] *Guye v. Home Indem. Co.*, 241 Ga. 213, 215 (244 SE2d 864) (1978).

29

Importantly, OCGA § 31-6-44 (k) (1) expressly requires the commissioner not only state this requisite finding, but to do so *with particularity in writing*. Under these circumstances, despite the deference courts generally afford to administrative agencies, when "the statutory text is clear and unambiguous, we attribute to the statute its plain meaning . . . ."[58] We are not at liberty to do otherwise.[59]

---

[58] *Deal v. Coleman*, 294 Ga. 170, 173 (1) (a) (751 SE2d 337) (2013) (punctuation omitted). Coliseum contends that, under *Ga. Dep't of Cmty. Health v. Satilla Health Servs., Inc.*, 266 Ga. App. 880 (598 SE2d 514) (2004), this Court "must defer to the Department's decisions regarding policy, as well as to the Department's interpretation and enforcement of its own rules." *Satilla Health Servs., Inc.*, 266 Ga. App. at 887 (1) (c). But we are not considering any particular policy decision by the Department. Instead, we are tasked with determining whether the Department complied with the plain language of OCGA § 31-6-44 (k) (1). Suffice it to say, that is a distinctly judicial function. *See infra* note 59. And again, neither party has argued the statutory language at issue is ambiguous.

[59] *See Handel v. Powell*, 284 Ga. 550, 553 (670 SE2d 62) (2008) ("While judicial deference is afforded an agency's interpretation of statutes it is charged with enforcing or administering, the agency's interpretation is not binding on the courts, which have the ultimate authority to construe statutes . . . . The judicial branch makes an *independent determination* as to whether the interpretation of the administrative agency correctly reflects the *plain language* of the statute and comports with the legislative intent." (citations and punctuation omitted) (emphasis supplied)); *Exec. Limousine Transps., Inc. v. Curry*, 361 Ga. App. 626, 628-29 (865 SE2d 217) (2021) (same)). Some judges of this Court believe the time has come to reconsider such deference. As Judge Don Willett has aptly noted, "interpreting the laws under which Americans live is a quintessentially judicial function." *Forrest Gen. Hosp. v. Azar*, 926 F3d 221, 234 (III) (5th Cir. 2019); *see also Marbury v. Madison*, 5 U.S. 137, 177 (2 LE2d 60) (1803) (holding that "it is emphatically the province and duty of the judicial department to say what the law is"); *Michigan v. E.PA.*, 576 U.S. 743, 762

Coliseum further argues the hearing officer made several legal conclusions disguised as factual findings. But even if the sentences in the hearing officer's findings of fact cherry-picked by Coliseum can be construed as legal conclusions in disguise, Coliseum provides no legal authority suggesting the commissioner no longer had to comply with OCGA § 31-6-44 (k) (1) as to the hearing officer's *factual* findings.

The appellants also claim the factual findings at issue were not stricken, deleted, or modified, but instead, the commissioner merely explained that they were not relevant to his legal conclusions. But again, the relevance of the hearing officer's factual findings turned solely on the commissioner's rejection of his legal

(135 SCt 2699, 2712-2714, 192 LE2d 674) (2015) (Thomas, J., concurring) ("The judicial power, as originally understood, requires a court to exercise its independent judgment in interpreting and expounding upon the laws. Interpreting . . . statutes—including ambiguous ones administered by an agency—calls for that exercise of independent judgment. *Chevron* deference precludes judges from exercising that judgment, forcing them to abandon what they believe is the best reading of an ambiguous statute in favor of an agency's construction. It thus wrests from Courts the ultimate interpretive authority to 'say what the law is,' and hands it over to the Executive . . . . [W]e seem to be straying further and further from the Constitution without so much as pausing to ask why. We should stop to consider that document before blithely giving the force of law to any other agency 'interpretations' of federal statutes." (citations & punctuation omitted)); *City of Guyton*, 305 Ga. at 799 ("At the core of the judicial power is the authority and the responsibility to interpret legal text.").

conclusions. Furthermore, in at least one instance, the commissioner expressly stated that a certain finding of fact by the hearing officer was "stricken in its entirety" based on his *legal conclusion* that the hearing officer could not consider Coliseum's proposed location as it related to the socioeconomic status of the relevant population.[60] In doing so, the commissioner based the rejection of the hearing officer's factual finding on a legal conclusion regarding the application of the general review considerations, which is expressly prohibited by OCGA § 31-6-44 (k) (1).[61] Simply put, nothing in OCGA § 31-6-44 (k) (1) allows the commissioner to circumvent its procedural requirements merely by rejecting a fact as irrelevant to his legal conclusions without, as an initial matter, determining whether it was supported by competent substantial evidence.

Citing OCGA § 31-6-44.1 (a) (5), the Department maintains that, although the commissioner may only reject the hearing officer's factual findings if he first finds they are unsupported by competent substantial evidence, *courts* are limited to

---

[60] *See* OCGA § 31-6-42 (a) (5) (listing as a general review consideration whether "[t]he effects of new institutional health service on payors for health services, including governmental payors, are not unreasonable . . . .").

[61] *See* OCGA § 31-6-44 (k) (1) ("Rejection or modification of conclusions of law may not form the basis for rejection or modification of findings of fact.").

considering whether the Department's ultimate factual findings are supported substantial evidence. But as explained *supra*, under OCGA § 31-6-44.1 (a), the lack of substantial evidence to support the Department's final decision is only one of six independent bases for reversing that decision. And here, the trial court relied on different subsections of this statute in reversing the Department's decision. The Department also contends the trial court erred in finding that it had no authority to reweigh the evidence. But the Department does not identify any independent, alternative, or material factual findings made by the commissioner for this Court to consider, and the commissioner based his decision primarily on his rejection of the hearing officer's legal conclusions, rather than on any alternative factual findings or re-weighing the evidence.

In sum, the commissioner's rejections of the hearing officer's factual findings were based on a myriad of reasons, none of which related to whether they were supported by competent substantial evidence; and in some instances, the commissioner even acknowledged that evidence did support the relevant factual findings. The commissioner also relied upon his rejections of the hearing officer's legal conclusions regarding the application of the general review consideration in disregarding or rejecting several factual findings. Thus, the commissioner violated

33

the plain language of OCGA § 31-6-44 (k) (1) and exceeded the scope of his authority under that statute. And as a result, the trial court was authorized under OCGA § 31-6-44.1 (a) to reverse the Department's final decision to grant the CON to Coliseum on this basis.[62]

(2) The Department further argues the trial court erred by finding that Houston's substantial rights were prejudiced by any potential errors made by the commissioner.[63] We disagree.[64]

---

[62] *See Palmyra Park Hosp., Inc.*, 310 Ga. App. at 488 (acknowledging that "reviewing courts may reverse an agency decision if it was based on legal error and unlawful procedures . . . ")*;* OCGA § 31-6-44.1 (a) ("[T]he *court* may reverse or modify the [Department's] final decision only if substantial rights of the appellant have been prejudiced because the procedures followed by the [D]epartment, the hearing officer, or the commissioner or the administrative findings, inferences, and conclusions contained in the final decision are . . . (1) [i]n violation of constitutional or *statutory provisions*; *[or]* (2) [i]n excess of the *statutory authority* of the [D]epartment." (emphasis supplied)).

[63] Houston contends the Department waived its lack-of-prejudice argument by failing to raise it in the trial court. To the contrary, the Department did raise this argument in one of its responsive briefs below, albeit in a conclusory manner. And because the trial court believed *Coliseum* raised the issue, the court addressed it. Consequently, because the Department's lack-of-prejudice argument was raised and ruled upon in the trial court, we may address it on appeal. *Cf. Ga. Dep't of Nat. Res. v. Coweta Cnty.*, 261 Ga. 484, 485 (405 SE2d 470) (1991) ("Issues which have not been ruled on by the trial court may not be raised on appeal."). But Coliseum has abandoned any lack-of-prejudice argument by failing to raise it on appeal. *See* CT. APP. R. 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."). Indeed, in its brief,

34

As noted by the Department, even if the commissioner errs in his rejection or modification of the hearing officer's findings of fact, a trial court is only authorized to reverse the Department's final decision on a CON application "if substantial rights

---

Coliseum merely acknowledges the prejudice requirement in quoting the statute without making any legal argument that *Houston* was not prejudiced by any errors made by the commissioner. *See Farmer v. Dep't of Corr.*, 346 Ga. App. 387, 394 (2) (816 SE2d 376) (2018) ("[M]ere conclusory statements are not the type of meaningful argument contemplated by our rules." (punctuation omitted)); *Woods v. Hall*, 315 Ga. App. 93, 96 (726 SE2d 596) (2012) ("[A]n assertion of error followed by a [legal] citation is not legal argument, which requires, at a minimum, a discussion of the appropriate law as applied to the relevant facts." (punctuation omitted)). Instead, Coliseum argues that *it* was prejudiced by the *trial court's* errors, but OCGA § 31-6-44 (a) addresses the judicial standard of review and applies only to certain enumerated errors made by the Department. Nevertheless, because, in addressing the Department's lack-of-prejudice argument, we must necessarily consider whether the commissioner's legal conclusions were erroneous, we will consider arguments made by both appellants in that regard.

[64] The appellants argue at length the trial court erred in finding that the reasoning in four unappealed 2012 Department desk decisions—denying CONs for proposed FSEDs—must be considered precedential and binding on the commissioner in this case. *See Eastside Medical Center, LLC* (Project No. GA-2012-032); *Doctor's Hospital of Augusta, LLC* (Project No. 2012-043); *University Health Services, Inc.* (Project No. GA 2012-047); *Cartersville Medical Center, LLC* (Project No. GA 2012-065). While we are doubtful lower-level agency decisions are binding on the commissioner (who conducts a higher level of administrative review), we need not address this issue. It is undisputed that, as of the 2019 amendments to the CON Act, FSEDs are now CON-regulated entities, and as explained *passim*, the plain and unambiguous language in the relevant statutes and administrative rules are dispositive of the issues presented in the instant appeals.

of the appellant[65] have been prejudiced"[66] by those errors. Here, the trial court found that Houston's substantial rights were prejudiced because the commissioner's decision "contain[ed] all the errors for reversal in OCGA § 31-6-44 (a)" and issuing the CON to Coliseum would result in "devastating financial consequences on Houston and other existing providers." In this regard, we have already held the commissioner's decision satisfied at least three independent bases for reversal outlined in that statute. Importantly, neither the Department nor Coliseum challenge the accuracy of the hearing officer's findings of fact regarding whether Houston would be financially harmed by Coliseum's proposed FSED. Instead, the Department argues the trial court erred in finding the commissioner was *required to consider* the financial impact the proposed FSED would have on existing area hospitals when

---

[65] Given that there are several levels of appellate review under the CON program, we note that Houston—an appellee in this appeal—was the "appellant" in the trial court for purposes of OCGA § 31-6-44.1 (a).

[66] OCGA § 31-6-44.1 (a).

applying the "positive-relationship rule."[67] We address the positive-relationship general review consideration below in Division V (3) *infra*.

Relevant here, the Department argues Houston was not prejudiced by the commissioner's alleged errors because, even if the commissioner adopted all of the hearing officer's findings of fact, there is no reasonable probability the outcome of the proceedings would have been different.[68] Thus, in evaluating the Department's argument in this regard, we will presume (for the sake of argument) that the hearing officer's findings of fact were supported by competent substantial evidence and address only whether the commissioner's legal conclusions were sound even if he had adopted those findings.

As to the commissioner's application of the general review considerations outlined in OCGA § 31-6-1 (a), we note that "[t]he interpretation of [a] statute[ ] . . .

---

[67] *See* OCGA § 31-6-42 (a) (8) (listing as a general review consideration for the grant or denial of a CON whether "[t]he proposed new institutional health service has a positive relationship to the existing health care delivery system in the service area . . ."). Coliseum has abandoned any arguments regarding the positive-relationship argument by failing to raise it on appeal. *See supra* note 63.

[68] *See, e.g.*, *Satilla Health Servs., Inc.*, 266 Ga. App. at 888 (1) ("Regardless of whether substantial evidence supported the hearing officer's factual findings, the Review Board was authorized to reverse the [hearing] officer's policy-ridden determination that this is the type of case in which a rarely-used exception to the CON criteria should be granted.").

. is a question of law, which we review de novo on appeal."[69] In considering the meaning of a statute, this Court must afford the statutory text its plain and ordinary meaning,[70] consider the text contextually,[71] read the text "in its most natural and reasonable way, as an ordinary speaker of the English language would,"[72] and seek to "avoid a construction that makes some language mere surplusage."[73] Simply put, when the language of a statute is "plain and susceptible of only one natural and

---

[69] *See Expedia, Inc. v. City of Columbus*, 285 Ga. 684, 689 (4) (681 SE2d 122) (2009) ("The interpretation of [a] statute[ ] . . . is a question of law, which we review de novo on appeal."); *Harris v. Mahone*, 340 Ga. App. 415, 417 (1) (797 SE2d 688) (2017) (same); *Kemp v. Kemp*, 337 Ga. App. 627, 632 (788 SE2d 517) (2016) (same).

[70] *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014); *accord Deal*, 294 Ga. at 172 (1) (a).

[71] *Holcomb*, 329 Ga. App. at 517 (1); *see Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]").

[72] *Monumedia II, LLC v. Dep't of Transp.*, 343 Ga. App. 49, 52 (1) (806 SE2d 215) (2017) (punctuation omitted); *accord Deal*, 294 Ga. at 172-73 (1) (a).

[73] *Monumedia II, LLC*, 343 Ga. App. at 52 (1) (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 518 (1).

reasonable construction, courts must construe the statute accordingly."[74] With these guiding principles in mind, we turn now to the appellants' specific arguments.

(a) *Existing Alternatives Consideration.*

The Department first argues the trial court's interpretation of the "existing services" general review consideration conflicts with the CON Act and is "unworkable." Similarly, Coliseum argues the trial court erred in finding the commissioner's ultimate legal conclusions depended on impermissible factual findings and were otherwise inconsistent with the CON Act's general review considerations.

In this regard, the CON Act lists 17 general review considerations in evaluating a CON application. Relevant here, OCGA § 31-6-42 (a) (2)-(3) provides,

> [t]he [D]epartment shall issue a [CON] to each applicant whose application is consistent with the following considerations and such rules deemed applicable to a project . . .

---

[74] *Monumedia II, LLC*, 343 Ga. App. at 52 (1) (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 518 (1); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

(2) [t]he population residing in the area served, or to be served, by the new institutional health service has a *need for such services*; [and]

(3) *[e]xisting alternatives for providing services in the service area* the *same* as the new institutional health *service* proposed are neither currently available, implemented, similarly utilized, nor capable of providing a less costly alternative, or no certificate of need to provide such alternative *services* has been issued by the department and is currently valid[.][75]

Furthermore, in setting forth the *codified* policy and purpose of the CON Act, the General Assembly enacted OCGA § 31-6-1, which provides that "[h]ealth care services and facilities should be provided in a manner that *avoids unnecessary duplication of services*, that is cost effective, that provides quality health care *services*, and that is *compatible with the health care needs of the various areas and populations of the state*."[76]

Additionally, the Department's own rules mandate that existing services in the proposed service area and the need for similar services in the area be taken into account when issuing a CON. Indeed, in relevant part, Department Rule 111-2-2.09

---

[75] (Emphasis supplied).

[76] (Emphasis supplied).

(1) (c) (3)—which delineates general review considerations for issuing a CON—provides

> *existing alternatives* for providing *services* in the *service area the same* as the new institutional health *service* proposed are neither currently available, implemented, similarly utilized, nor capable of providing a less costly alternative, or no [CON] to provide such alternative *services* has been issued by the Department and is currently valid
>
> > 1. The Department supports the concept of *regionalization of those services* for which a service-specific Rule exists.
> >
> > 2. The Department shall consider economies of scale where *need exists for additional services or facilities*.
> >
> > 3. Utilization of *existing facilities and services similar to a proposal to initiate services shall be evaluated to assure that unnecessary duplication of services is avoided*. Where there exists significant unused capacity, *initiating a similar service* in another health care facility would *require strong justification under other criteria*.[77]

Turning to the instant case, the hearing officer made detailed factual findings regarding the existing emergency services available in and around the proposed service area, which, again, we accept for purposes of considering the prejudice requirement in OCGA § 31-6-44.1 (a). Specifically, the hearing officer noted that Coliseum acknowledged the overlap of patients to be treated at the proposed FSED,

---

[77] Ga. Comp. R. r. 111-2-2.09 (1) (c) (3) (emphasis supplied).

hospital emergency departments, and UCCs. And in considering such overlap in services, the hearing officer found there were numerous existing alternatives to the services that would be provided at Coliseum's proposed FSED. Specifically, the hearing officer determined that there were six hospital emergency departments and 20 UCCs in the relevant service area. And he further concluded that three of those hospitals are located less than 8 miles from Coliseum's proposed project site.

Additionally, the evidence shows that four of Houston's UCCs were within four miles of the proposed FSED location and those UCCs treat the top 10 diagnostic codes at other FSEDs owned by Coliseum's parent company in other areas of the country. Significantly, by statute, each of the hospitals that challenged Coliseum's CON application were only permitted to do so *by the Department* because they offered *substantially similar services* within a 35 mile radius of the proposed FSED or had a service area that overlapped with the FSEDs proposed location.[78] Given these and other similar factual findings, the hearing officer ultimately found that the "services area residents with lower[-]acuity illnesses and injuries *of the sort that*

_____

[78] *See* OCGA § 31-6-43 (d) (2) (A) ("No party may oppose an application for a certificate of need for a proposed project unless . . . [s]uch party offers substantially similar services as proposed within a 35 mile radius of the proposed project or has a service area that overlaps the applicant's proposed service area.").

42

*Coliseum's proposed FSED would treat* already have many options for care, including in Bonaire where the proposed FSED would be located."[79]

In reversing the hearing officer's decision, the commissioner concluded that his factual findings led to a faulty legal conclusion that hospital emergency departments and UCCs are comparable existing alternatives to FSEDs for purposes of the CON Act. In doing so, the commissioner reasoned that they are not comparable alternatives under the CON Act because they provide different "delivery models of care." The commissioner then concluded that the "fashioning of [the hearing officer's findings of fact] only works if all three service modalities are considered comparable." Similarly, the commissioner determined that "unnecessary duplication assumes all [three] service delivery models are comparable," and then concluded that

---

[79] (Emphasis supplied). The Department maintains that the General Assembly's decision to define an FSED as "freestanding emergency rooms or facilities *not located on a hospital's primary campus*" reflected its determination that the emergency healthcare services provided by hospital emergency departments are different than those provided by an FSED. (Emphasis in original). But the different *locations* of these emergency healthcare facilities have no bearing on whether they provide similar healthcare *services*. As previously noted, Coliseum—which is a 310-bed acute care hospital—stated in its CON application that it planned to "*expand its emergency service* by building [an FSED] . . . ." (emphasis supplied). Thus, even Coliseum—a large hospital near the proposed FSED site—acknowledged that the FSED would provide the same or similar emergency services as its nearby on-site emergency department.

they were not comparable. In sum, as to the "existing alternatives" general review consideration, the commissioner concluded that the Department must only consider the way in which the various entities *delivered* care, rather than whether the types of medical services provided by each entity were the same or similar. This legal conclusion directly conflicts with the plain and unambiguous language in both the CON Act and the Department's own rules.

The relevant language in the CON Act requires the Department to consider existing alternatives to the proposed new healthcare facility and instructs it to avoid duplication of healthcare *services.* The relevant statutes repeatedly and explicitly instruct the Department to consider the similarity or unnecessary duplication of healthcare *services*, rather than evaluating different types of facilities or "delivery models."[80] And in its similar provisions, the Department's own rules regarding the

---

[80] *See* OCGA § 31-6-42 (a) (2)-(3) ("The [D]epartment shall issue a certificate of need to each applicant whose application is consistent with the following considerations and such rules deemed applicable to a project . . .[t]he population residing in the area served, or to be served, by the new institutional health service has a *need for such services* [and] . . . existing alternatives for providing *services* in the service area *the same as the new institutional health service proposed* are neither currently available, implemented, similarly utilized, nor capable of providing a less costly alternative, or no certificate of need to provide such *alternative services* has been issued by the [D]epartment and is currently valid[.]"(emphasis supplied)); OCGA § 31-6-1 ("Health care services and facilities should be provided in a manner that *avoids unnecessary duplication of services*, that is cost effective, that provides

44

existing-alternatives general review consideration and unnecessary duplication of services also refer to alternative healthcare "services."[81] In fact, the Department's rules go further, emphasizing that when "[t]here exists significant unused capacity, initiating a *similar service* in another health care facility would *require strong justification under other criteria*."[82] Simply put, neither the commissioner nor the appellants have identified any language in the CON Act or the Department's rules remotely suggesting the consideration of "existing alternatives" for a new healthcare facility means the consideration of other similar facilities or similar methods by which they provide care, rather than the overlap of similar healthcare services provided by those facilities.

Nevertheless, the Department maintains it should only consider similar types of facilities or delivery models of care because, under OCGA § 31-6-40 (a) (1),

---

quality health care services, and that is *compatible with the health care needs of the various areas and populations of the state*." (emphasis supplied)).

[81] *See* Ga. Comp. R. & Regs. r. 111-2-2-.09 (c) (3) (setting forth numerous general review considerations, including "existing alternatives for providing *services* in the service area[,] . . .[u]tilization of existing facilities and *services similar* to a proposal to initiate *services* shall be evaluated to assure that unnecessary *duplication of services* is avoided . . ." (emphasis supplied)).

[82] *Id.* (emphasis supplied).

45

"[n]ew institutional healthcare services" is defined as "[t]he construction, development, or other establishment of a new, expanded, or relocated health care facility . . . ."[83] But even if words in a statute are apparently plain in meaning, they "must not be read in isolation and instead, must be read in the context of the [statute, rule, or] regulation as a whole."[84] And in the sections of the CON Act and the Department's rules *specifically* delineating the general review considerations for granting or denying a CON, the language used does not require the Department to consider whether the healthcare *facilities* at issue are similar. Moreover, as our Supreme Court has rightly emphasized, under our general rules of statutory construction, there is a "preference to specific provisions over general ones."[85] Here,

---

[83] OCGA § 31-6-40 (a) (1).

[84] *Upper Chattahoochee Riverkeeper*, 318 Ga. App. at 502 (1); *accord Pfeiffer*, 250 Ga. App. at 646 (2); *see Barrow*, 305 Ga. at 805 (3) ("The primary determinant of a text's meaning is its context, which includes the structure and history of the text and the broader context in which that text was enacted, including statutory and decisional law that forms the legal background of the written text."); *New Cingular Wireless PCS*, 303 Ga. at 472 (2) ("In this regard, in construing language in any one part of a statute [or regulation], a court should consider the entire scheme of the statute [or regulation] and attempt to gather the legislative intent from the [text of] statute [or regulation] as a whole." (punctuation omitted)).

[85] *Everetteze v. Clark*, 286 Ga. 11, 14 (4) (685 SE2d 72) (2009); *see Montgomery Cnty. v. Hamilton*, 337 Ga. App. 500, 507 (1) (788 SE2d 89) (2016) ("When there is in the same statute a specific provision, and also a general one which

46

both the context and relevant canons of construction make it clear that the Department's argument is a nonstarter.

The Department further contends the commissioner had no authority to consider UCCs when evaluating Coliseum's CON application because they are not CON-regulated entities.[86] But the legal authorities cited by the Department do not address that issue,[87] and the Department has not identified any language in the CON

_____

in its most comprehensive sense would include matters embraced in the former, the particular provision must control, and the general provision must be taken to affect only such cases within its general language as are not within the provisions of the particular provision. (punctuation omitted)).

[86] While UCCs are not included in the definition of "new healthcare facility" under the CON Act, OCGA § 31-6-40 (a) (2) provides that "[n]ew institutional *health services* include . . . [a]ny expenditure by or on behalf of a health care facility in excess of $10 million which, under generally accepted accounting principles consistently applied, is a capital expenditure, except expenditures for acquisition of an existing health care facility." (emphasis supplied)). And the Department acknowledges that "UCC projects . . . *require CON review* . . . [when] a CON-regulated health care facility is the entity proposing to develop an urgent care center at a cost exceeding the statutory capital threshold" set by OCGA § 31-6-40 (a) (2). (emphasis supplied). Thus, UCCs are CON regulated entities in at least in some circumstances, and, of course, they provide healthcare services.

[87] *See* OCGA § 31-6-21 (authorizing the Department to administer the CON program, without addressing any of the general review considerations); OCGA § 31-6-40 (a) ("On and after July 1, 2008, any new institutional health service shall be required to obtain a certificate of need pursuant to this chapter.); OCGA § 31-6-47 (a) (listing exemptions to being subject to the CON Act). The Department also cites *Premier Health Care Invs., LLC v. UHS of Anchor, L.P.*, 310 Ga. 32 (849 SE2d 441)

47

Act supporting this contention. The Department further argues the hearing officer's application of the general review considerations is impractical, unworkable, unfair, and would effectively prevent the construction of any FSEDs in Georgia, which would contravene the "intent" of the General Assembly in making them CON regulated. But the numerous legislators' personal interpretations of the general review considerations under the CON Act are ultimately of no consequence. This Court's *only* concern is with the plain meaning of the statutes at issue, which is rightfully our *sole* focus in determining the General Assembly's collective "intent."[88]

---

(2020), for the proposition that the opinion discussed constitutional concerns supporting a more narrow construction of the Department's delegated authority under the CON Act, but nothing in that opinion related to the general review considerations at issue.

[88] *See Beasley v. Ga. Dep't of Corr.*, 360 Ga. App. 33, 41 (3) (a) (861 SE2d 106) (2021) ("Appellate courts must discern the 'intent' of the legislature through the words contained in enacted statutes, and nothing more."); *Monumedia II, LLC v. Dep't of Transp.*, 343 Ga. App. 49, 55 (1) (806 SE2d 215) (2017) ("[W]e are charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies), as well as with faithfully following the precedents established by higher courts. And importantly, both our constitutional system of government and the law of this State prohibit the judicial branch from amending a statute by interpreting its language so as to change the otherwise plain and unambiguous provisions." (footnotes & punctuation omitted)); *Merritt v. State*, 286 Ga. 650, 656 (690 SE2d 835) (2010) (Nahmias, J., concurring specially) ("[W]hen judges start discussing not the meaning of the statutes the legislature actually enacted, as determined from the text of those laws, but rather the unexpressed 'spirit' or 'reason' of the legislation, and the need to make sure the law does not cause

In sum, the commissioner erred in determining that, when considering existing alternatives to Coliseum's FSED, the Department must consider only whether the various entities have a similar delivery model, rather than whether they provide similar services at the proposed healthcare facility. And because the commissioner's legal conclusions were erroneous, the Department and Coliseum cannot show that Houston's rights were not substantially prejudiced by his statutory violations.

(3) *Positive-Relationship Consideration.*

The Department also argues the hearing officer improperly added an "adverse impact" requirement to the general review consideration concerning whether the proposed FSED has a "positive relationship" with the existing healthcare delivery

'unreasonable consequences,' [thus venturing] into dangerously undemocratic, unfair, and impractical territory."); *Bellsouth Telecomm., LLC v. Cobb Cnty.*, 342 Ga. App. 323, 335 n.16 (802 SE2d 686) (2017), *vacated on other grounds by Bellsouth Telecommunications, LLC v. Cobb Cnty.*, 352 Ga. App. 110 (834 SE2d 124) (2019) (Dillard, J., concurring fully and specially) ("In my view, our appellate courts should stop referencing altogether the ethereal fiction of 'legislative intent' in the context of statutory interpretation. A judge should not care about what any legislator intended but did not expressly provide for in the statutory text."); *see also Richardson v. State*, 276 Ga. 639, 640 (1) (581 SE2d 528) (2003) ("Courts of last resort must frequently construe the language of a statute, but such courts may not substitute by judicial interpretation language of their own for the clear, unambiguous language of the statute, so as to change the meaning." (punctuation omitted)); *In re Whittle*, 339 Ga. App. 83, 88 (1) (793 SE2d 123) (2016) (holding that if an appellant's policy arguments are ultimately to prevail, they should be made to our General Assembly, not an appellate court).

system.[89] This argument is based purely on semantics. Any proposed healthcare facility that would have an adverse impact on the existing healthcare delivery system would necessarily lack a positive relationship to that system. Furthermore, the Department mischaracterizes the hearing officer's conclusion in this regard. Indeed, in addressing the positive-relationship consideration, the trial court outlined the adverse impact the proposed FSED would have on the existing healthcare system, but did not find that there was a specific adverse-impact requirement the Department must consider.

As to Coliseum's proposed FSED's impact on the existing healthcare system, Coliseum even projected that if its FSED were approved, "HMC would lose 10%, Perry would lose 8.2%, and Peach would lose 7.1% of their respective 2019 [emergency department visits]." Further, Peach was "particularly financially vulnerable and is not in the position to absorb the losses that would result from Coliseum's proposed project[,]" as it already "operated at a loss of -$1.5 million" in 2018. Additionally, expert testimony established that lost emergency room visits alone would cause Peach to lose roughly $2.7 million. Under these circumstances, not

---

[89] *See* OCGA § 31-6-42 (a) (8) (instructing the Department to consider whether "[t]he proposed new institutional health service has a positive relationship to the existing health care delivery system in the service area").

only would the proposed FSED lack a positive relationship with the existing healthcare delivery system, it could financially devastate at least one of the area hospitals.

To summarize, the commissioner violated OCGA § 31-6-44 (k) (1) and exceeded the scope of his statutory authority by failing to find, with particularity, in his written order that any rejected or modified findings of fact by the hearing officer were unsupported by competent substantial evidence. He further violated the same statute by repeatedly basing his rejection of the hearing officer's factual findings on the rejection of his legal conclusions. And because the commissioner's legal conclusions were also flawed, the appellants cannot show that Houston was not substantially prejudiced by his ultimate decision.

For all these reasons, we vacate the Houston County court's judgment and remand the case with instructions for the trial court to vacate the Department's final decision and remand the case for the Department's further consideration of Coliseum's CON application in a manner consistent with this opinion.[90]

---

[90] *See Greene v. Dep't of Cmty. Health,* 293 Ga. App. 201, 201 (666 SE2d 590) (2008) (vacating the superior court's order and remanding the case for review by the Department under a proper standard of review); *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (II) (123 SCt 353) (154 LE2d 272) (2002) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."

*VI. Case Nos. A22A1249 and A22A1250 - The Peach County Cases.*

Because in Division V *supra*, we determined the Department must reconsider Coliseum's CON application consistent with this opinion and issue a revised decision, we need not address the arguments raised by Coliseum and the Department, challenging the Peach County court's similar judgment. Instead, we likewise vacate that judgment and provide the same instructions given to the Houston County court, detailed *supra*.

*Judgments vacated and cases remanded with direction in Case Nos. A22A1013, A22A1014, A22A1249, and A22A1250. Mercier and Markle, JJ., concur in judgment only.*

---

(punctuation omitted)); OCGA § 50-13-19 (h) (providing that, in reviewing an administrative agency's decision, "[t]he court may affirm the decision of the agency *or remand* the case for further proceedings" (emphasis supplied)).